**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re:

NATIONAL BROKERS OF AMERICA, INC.

Chapter 7

    Debtor.

Bankruptcy No. 19-15488-pmm

_____

_____

## DEBTOR'S MOTION FOR ENFORCEMENT OF THE AUTOMATIC STAY, VACATING OF JUDGMENTS AS VOID, AND ENJOINING JASON SCOTT JORDAN FROM PURSUING CLAIMS IN BERKS COUNTY CIVIL DOCKET 14-17117

Debtor, National Brokers of America, through undersigned counsel, request that the Court enter an order enforcing the automatic stay, voiding the judgments entered in Berks County Pennsylvania against Debtor, Alan C. Redmond, and Bene Market, LLC, enjoining Jason Scott Jordan from pursuing claims against the same in Berks County, Pennsylvania, Court of Common Pleas Civil Docket 14-17117, and issuing sanctions against Joel Ready, Esq. and Cornerstone Law Firm.

**Introduction**

This Motion asserts that Jason Jordan, by and through his counsel, Joel Reedy, Esq. and Cornerstone Law Firm, David Crossett, Esq. and Joel Reedy, Esq. and the Berks County Court of Common Pleas violated the Automatic Stay in this matter by obtaining, entering, and subsequently enforcing a judgment in excess of $13,000,000 pursuant to a verdict in a civil matter after trial in the Berks County Court of Common Pleas ("The Berks Matter") against Debtor, Alan C. Redmond and Bene Markets, LLC. It further asserts that Jason Jordan through counsel continues to violate the automatic stay in this matter as they are seeking assets of Debtor through a separate law suit

brought in the Berks County Court of Common Pleas in which Alan C. Redmond, Bene Markets, LLC and Stephanie Miller are Defendants ("The Pending Matter")

<strong>Relevant Proceedings and Events</strong>

Below is an abbreviated list of proceedings in Pennsylvania and before this Court which are relevant to the content and context of the present Motion

**Relevant Procedural and Factual History – Pennsylvania Proceedings**

1. On October 28, 2014, Debtor filed a Complaint against Jason Scott Jordan ("Jordan") in the Berks County, Pennsylvania, Court of Common Pleas seeking recovery on claims of Breach of Contract and Defamation, Berks County Civil docket 14-17117 ("the Berks Matter").

2. The gist of the Debtor's claims was that:

    a. Alan C. Redmond, then sole owner of Debtor, offered employment and ownership interest to Jordan upon assurances that Jordan had a clean criminal history and was licensed to sell insurance; despite said assurance, after entering into an employment and ownership sharing contract with Jordan, it was learned Jordan had a substantial criminal history and was not licensed to sell insurance;

    b. Jordan was charged, subsequent to the employment and ownership sharing contract, with two separate Driving Under the Influence charges and was beginning to miss work, perform poorly at work, and become threatening to employees at work;

    c. Based upon Jordan's behavior and lack of credentials, Debtor refused Jordan access to the work premise and business decision making procedures to protect Debtor from liability;

    d. And that Jordan subsequently began making false, defamatory statements against Debtor on social media which damaged Debtor.

3. On December 11, 2014, Jordan filed an Answer with New Matter and Counterclaim, seeking relief on claims of Breach of Contract, Breach of Fiduciary Duty, and requesting that an appraiser be appointed. Alan C. Redmond ("Redmond") was also added as a Plaintiff to the Berks Matter.

4. A summary of the claims of Jordan against Debtor and Redmond is that:

    a.    Jordan was illegally terminated under the employment and ownership sharing contract;

    b.    Jordan's rights as a shareholder of Debtor were breached;

    c.    The Debtor had failed to pay Jordan's legal fees as required;

    d.    And that the action of Debtor and Redmond amounted to an illegal freeze out of Jordan.

5. After extensive pre-trial litigation, including an appeal to the Superior Court of Pennsylvania, a bench trial was held on the Counterclaim in the Berks Matter in September 2021.

6. In a Decision and Verdict issued by the Honorable Timothy J. Rowley on December 20, 2021 (see "Exhibit A" attached hereto), the Trial Court found, *inter alia*:

    a.    Debtor was organized in February 2013 to serve as an insurance call center;

    b.    In July of 2013, at a time when Debtor was indisputably not profitable, Debtor hired Jordan as an *employee* via an employment contract. The contract was offered due, in part, to his experience in the insurance sales industry;

    c.    On November 1, 2013, a "Shareholders' Agreement" (attached as "Exhibit B" hereto) was executed by Jordan and Redmond whereby Redmond and Jordan became equal ("50/50") owners of Debtor. Further set forth in the agreement, Jordan and Redmond would hold

equal voting rights in consideration of Debtor failing to pay Jordan all monies allegedly owed Jordan under the employment contract;

  d. From November 1, 2013 through August 4, 2014, Redmond and Jordan were equal in every way as owners of Debtor, a period in which Debtor became "very" profitable (See "Exhibit A" supra);

  e. On August 4, 2014, Redmond effectuated a "freeze-out" of Jordan, refusing him access to Debtor's property, management of Debtor, and profits from Debtor, and the freeze out continued through trial;

  f. That post-freeze out, Redmond failed to keep corporate procedure of Debtor and treated profits of Debtor as profits of Redmond and filed false or fraudulent tax documents through C. Malcolm Smith & Co. regarding Debtor;

  g. Redmond transferred over $360,000.00 from Debtor to Bene Market, LLC ("Bene"), a business 96% owned by Redmond, along with Debtor's book of business, essentially and legally making Bene a successor of a now practically-defunct Debtor;

  h. That between the above and the time of trial, Redmond "misappropriated" $3,698,627.10 directly from Debtor and an additional $11,797,865 from Bene for a combined total of $15,496,492 in profit that was not shared with Jordan; and

  i. The actions of Redmond in "freezing out" Jordan and subsequent management of Debtor was in violation of the Shareholders' Agreement and Bylaws of Debtor.

7. The Court entered a verdict in favor of Jordan and against Redmond as follows:

  a. $8,105,197.20 in compensatory damages;

  b. $5,000,000 in punitive exemplary damages;

  c. Total damages awarded in the amount of $13,105,197.20

8. On December 30, 2021, Redmond filed a Motion for Post-Trial Relief.

9. On January 11, 2022, due to the retirement of Judge Rowley, the Honorable Jeffrey K. Sprecher was appointed the Judge presiding over the Berks matter.

10. On March 31, 2022, Judge Sprecher issued an Amended Verdict, entering judgment in the amount of $13,105,197.20 against "**the Plaintiffs**", including NBOA, the debtor for whom a stay was and remains in place through this Honorable Court. A copy of the Amended Verdict entered by Judge Sprecher is attached as Exhibit "C."

11. Judgments in that amount have been entered in Berks County, Pennsylvania against both Redmond *and* Debtor (see judgment index attached as "Exhibit D" hereto).

12. On April 19, 2022, Redmond and the Debtor appealed to the Superior Court of Pennsylvania.

13. On October 21, 2022, an Order was issued staying the execution of the judgment.

14. On January 25, 2024, the stay of execution was lifted by the Superior Court of Pennsylvania.

15. On July 28, 2022, Jordan, by and through Joel Reedy, Esq. and Cornerstone Law Firm, filed a civil suit in the Berks County, Pennsylvania Court of Common Pleas against Bene, Redmond, and Stephania Miller ("Miller") asserting a claim of Unjust Enrichment, seeking to pierce Bene's corporate veil, and demanding damages and a receivership, Berks County Civil Docket 22-11757 ("the Pending Matter").

16. The gist of the Pending Matter is:

    a. That following the freeze out of Jordan referenced in the Berks Matter, and as determined in the Berks matter, Redmond misappropriated nearly $4 million of

    Debtor funds through payments of personal debts, legal fees, and distributions and salaries not shared with Jordan, a 50/50 owner;

b. That Redmond misappropriated Debtor's book of business by transferring it to Bene at a discounted rate;

c. That Bene essentially operated as the Debtor with simply a different name, having the same business model, location, employees, equipment, etc.

d. That Miller, the former Chief Financial Officer of Debtor, is a four percent (4%) owner of Bene;

e. That Redmond has misappropriated over $11 million from Bene without sharing with Jordan;

f. **That Bene is simply a continuation of Debtor, and that the assets of Bene are actually the assets of Debtor.**

g. **That Bene eschews all corporate formalities and is simply a façade for Redmond's personal dealings.**

**Relevant Procedural and Factual History – Present Bankruptcy Proceedings**

17. On September 3, 2019, Debtor filed its petition under Chapter 7 ("Petition").

18. On January 30, 2020, Jordan removed the Berks matter to this Court, docketed as Adversary Proceeding 20-000016.

19. On January 4, 2021, the Honorable Patricia M. Mayer signed a "Consent Order to Remand State Court Claims Against Alan Christopher Redmond to State Court and to Lift Stay for State Court Claims by Jason Scott Jordan Against Alan Christopher Redmond" entered into between Jordan and Chapter 7 Trustee, Robert H. Holber. A copy of the January 4, 2021 Consent Order is attached as Exhibit "E."

20. Pursuant to this Consent Order, Jordan was allowed to pursue claims **against Redmond only** as they were not core proceedings involving property of the Debtor's estate:

> Notwithstanding the Initial Stay Relief Order, the automatic stay (including a stay under 11 U.S.C. § 362) is hereby lifted as it applies to claims by Jason Scott Jordan against Alan Christopher Redmond in the State Court Action *provided however that such State Court Action shall not include any claims against the Debtor* or the Trustee nor shall the Trustee be required to participate in any discovery in the State Court action.

Exhibit "E" Consent Order at ¶ 5 (emphasis added).

21. At no point, at any time, for any duration, was the stay lifted as to Debtor or as to property of the Debtor's estate.

**Violation of the Automatic Stay – Argument**

The Debtor submits that the automatic stay was violated by the entry of the judgment against the Debtor in Berks matter. The Debtor further avers that as the finances of Redmond and Bene are so intertwined with that of Debtor- in fact, Jordan's judgment against Redmond and Bene is based on a theory that they inappropriately came into possessions of Debtor- this case presents an unusual circumstance under which the automatic stay should be applied not only to Debtor, but also third-parties Redmond and Bene. The Debtor further asserts that through the Pending Matter, Jordan and his counsel, Joel Reedy, Esq., and Cornerstone Law Firm, are knowingly continuing to violate the automatic stay as they seek damages from Redmond, Bene, and Miller from assets they not only acknowledge, but affirmatively argue, belong to Debtor's estate.

> Pursuant to 11 U.S.C. §362:
>
> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> **(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this

7

> title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> **(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> **(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> **(4)** any act to create, perfect, or enforce any lien against property of the estate;
> **(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
> **(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
> **(8)** the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable

Regarding the "estate";

> Such estate is comprised of all the following property, wherever located and by whomever held:
>
> **(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> …
>
> **(6)** Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
> **(7)** Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. §541.

Further, the automatic stay can also be applied to property of the estate of a debtor which is in the possession of a third party. The Third Circuit has recognized that the automatic stay can be extended to third parties in "unusual circumstances." <u>McCartney v. Inegra National Bank North</u>, 106 F.3d 506 (3rd Cir. 1997). In <u>McCartney</u>, the Third Circuit recognized one such unusual circumstance "where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against

8

the third-party defendant will in effect be a judgment or finding against the debtor." Id. at 510. (*quoting* A.H. Robbins Co. v. Piccinin, 488 F.2d 994, 999 (4th Cir. 1986). "Unusual circumstances exist warranting extension of the stay to nondebtors when: "(i) the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization" LTL Mgmt. v. Does, 21-30589 (MBK) (Bankr. D.N.J. Feb. 25, 2022) (quoting In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (E.D. Pa. 2009)).

In McCartney, the automatic stay was extended beyond the debtor and to an action on a loan against a third party to which the debtor was a guarantor. McCartney, 106 F.3d at 510-11. In A.H. Robbins, the automatic stay was applied to the debtor's co-defendants in product liability lawsuits as judgments against the co-defendants could potentially reduce the insurance pool available to the debtor, thus lessening the estate. A.H. Robbins, 488 F.2d 1008. In Philadelphia Newspapers, the automatic stay was applied to non-debtor co-defendants in civil suits as the debtor was contractually obligated to indemnify these co-defendants. Philadelphia Newspapers 407 B.R. at 613-14.

Further, along these lines, the Third Circuit has held that claims against a successor organization of the Debtor on a legal theory that the successor organization of the Debtor concern assets of the Debtor's estate and alleged injured parties do not have standing to bring suit seeking these assets. See In re Emoral, Inc., 740 F.3d 875 (3rd Cir. 2014). In Emoral, Aaroma was a successor corporation to Emoral, who at the time of the transfer of assets was knowingly open to liability for personal injury and product liability claims. Id. at 877. Emoral filed bankruptcy, and alleged injured parties brought suit against Aaroma in the New Jersey State Trial Court on claims of personal injury and product liability originating against Emoral, arguing

9

Aaroma was a "mere continuation" of Emoral. Id. The Third Circuit held that seeking to hold a successor entity liable as a mere continuation of another entity is a general claim, as any creditor of the original entity would be entitled to relief under the same theory. Id. at 880. A general claim is part of the original organization's bankruptcy estate and thus should be subject to prosecution by the bankruptcy trustee. Id. at 880. The same can be said about actions against a party under a veil-piercing theory. Id.

Here, the automatic stay has been violated. The automatic stay was imposed under §362 of the Code at the time of Debtors' filing of their Petition on September 3, 2019. At that point in time, pursuant to §362, all judicial proceedings against Debtor were stayed. This much was obvious and reflected in this Court's Consent Order of January 4, 2021, allowing the Berks Matter to proceed against Redmond alone. The Consent Order specifically states that the automatic stay was lifted as to claims only against Redmond "***provided however that such State Court Action shall not include any claims against the Debtor.***" Ex. "E," Consent Order at ¶ 5 (emphasis added). Further, the enforcement of any claim or judgment against the Debtor was stayed and *remains* stayed. Nonetheless, Judge Sprecher issued a verdict against Debtor on March 31, 2022 despite the stay, and a judgment was entered in Berks County in violation of the stay.

Further, Debtor submits to this Court that the judgments against Redmond and Bene are also in violation of the automatic stay under law and application. While this Court allowed the Berks Matter to continue against Redmond *individually*, the Decision and Verdict from Judge Rowley, and the evidence produced at trial on which the Opinion and Verdict were based, made clear that Redmond and Bene Market were liable to the extent they are in possession of the Debtor's assets. Judge Rowley found that after the supposed freeze-out of Jordan (which the Trial

10

Court itself ordered on Petition of Debtor in August of 2014), Redmond eschewed all corporate procedures required in the operation of Debtor.

Judge Rowley found that Redmond improperly distributed to himself profits rightfully belonging to Debtor. Judge Rowley found that Redmond improperly transferred Debtor's book of business to Bene, a company almost wholly owned by Redmond, and that the profits of Bene were actually attributable to Debtor. Judge Rowley further found that Redmond improperly transferred profits of Bene (actually belonging to Debtor) to himself. It is clear from the Decision and Verdict that any verdict and subsequent judgment against Redmond and Bene is due to their supposed finances being inseparably intertwined with Debtor and/or their being in possession of property actually, impliedly or legally belonging to Debtor.

According to Judge Rowley's holdings, Jordan was a 50/50 owner of Debtor from November 1, 2013. As such, Judge Rowley ruled Jordan was entitled to half of all profits distributed. This, according to Judge Rowley's ruling, would include profits which were produced by Bene, which Judge Rowley ruled was a clear successor business to Debtor.

Debtor submits that these facts inarguably demonstrate that these are "unusual circumstances" pursuant to the A.H., McCartney, and Philadelphia Newspapers line of cases in which the automatic stay should be extended to third-parties Redmond and Bene. The damages to which Jordan received a verdict and judgment to recover is property which belonged to Debtor, but Judge Rowley found was misappropriated by Bene and Redmond. Based on Judge Rowley's rulings, the finances of Redmond, Bene, and Debtor are so intertwined, Jordan's judgment against Redmond is a judgment against Debtor. Indeed, this is not a legal fiction since the judgment index is clear that a $13 million judgment was, in fact, entered against the Debtor. As such, the

11

judicial proceedings against Redmond violated the automatic stay and the entry and enforcement of the Berks County judgments against Redmond and Bene violate the automatic stay.

Further, Debtor submits that pursuant to Emoral and its predecessor and successor cases, Jordan, Joel Reedy, Esq. and Cornerstone Law Firm are actively violating the automatic stay by pursuing the Pending Matter. In the Pending Matter, Jordan and counsel do not tacitly admit that Bene is a "mere continuation" of Debtor in possession of Debtor assets, they ***expressly argue that point***. Moreover, by seeking to pierce Bene's corporate veil as a personal façade for Redmond, they are ***expressly attributing the assets of Debtor to Redmond***. The holding in Emoral is crystal clear- seeking damages from a third-party non-debtor as a mere continuation of the Debtor or through piercing the veil is seeking assets of the Debtor's Estate. Assets of the Debtor's estate are subject to the automatic stay.

For the foregoing reasons, the Debtor requests that this Court find that the Berks Matter's verdicts against it and Redmond violate the automatic stay, as do the entry and enforcement of judgments against it, Redmond, and Bene. The Debtor further requests that this Court find that the prosecution of the Pending Matter is a knowing violation of the automatic stay by Jordan, Joel Reedy, Esq. and Cornerstone Law Firm.

**Request for Remedies- Injunction, Void of Judgments, and Sanctions**

Bankruptcy Courts are courts of equity with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. 105(a).

**Equitable Relief- Injunction and Void of Judgment.**

The Debtor submits that to effectuate the purpose of the Code in this particular case, it would be equitable to issue an injunction prohibiting Jordan from attempting to enforce the

judgments entered against the Debtor, Redmond, and Bene.  Further, the Debtor submits that the liability, damages, and ability to meet those damages by Redmond and Bene in connection with the Berks matter are so intertwined with the Debtor's bankruptcy estate that the verdict against Debtor, Redmond, and Bene should be voided and litigation against these parties in the Berks matter must be returned to the status quo, as it existed *prior* to the Consent Order. This is because prosecuting the Berks matter against Redmond was in violation of the automatic stay in all aspects.

**Sanctions**

Section 362(k)(1) of the Bankruptcy Code provides redress for violations of the automatic stay. It mandates that, subject to exceptions not applicable in this case, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, **in appropriate circumstances, may recover punitive damages**."4 11 U.S.C. § 362(k)(1). "A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." In re Panek, 402 B.R. 71, 76 (D. Mass. 2009).  To be a "willful" violation of the stay, it is not necessary that the party has the specific intent to violate the stay, just that the act was clearly a violation of the stay.  *See* In Re Aleckna, No. 20-1309 (3d Cir. Sep. 9, 2021).

Here, the Pending Matter is a clear willful violation of the automatic stay.  Based on the crystal clear holding in Emoral, there can be no doubt in the mind of Jordan, Joel Reedy, Esq., and Cornerstone Law Firm that the Pending Matter- which seeks estate assets through theories of mere continuation and piercing veil liability- is a stay violation.  As such, Redmond and Bene are entitled to costs and legal fees associated with the Pending Matter.  They further requests punitive damages as the Pending Matter is a duplicative theory of liability from the Berks Matter- which itself turned

13

out to be a violation of the stay- and amounts to the harassment of Redmond and Bene over the verdict and judgment in the Berks Matter while clearly violating the stay.

Accordingly, Debtor requests that this Court enter:

1. The dismissal of the entire verdict and judgment in favor of Jordan in the Berks Matter (Berks County Civil Docket 14-17117);

2. Enjoin Jordan from prosecuting the Berks Matter and

3. Strike the judgments against the Debtor, Redmond, and Bene and/or prohibit their enforcement;

4. Dismissal of the Pending Matter (Berks County Civil Docket 22-11757);

5. Sanctions against Jason Jordan, Joel Reedy, Esq., and Cornerstone Law Firm in the amount of costs in defending the Pending Matter, including legal fees, and punitive damages.

Philadelphia, PA
May 24, 2024

RESPECTFULLY SUBMITTED,

___/s/ Norman M. Valz_____
Norman M. Valz, Esquire (Pa. No. 61338)
Attorney for Defendants
Norman M. Valz & Associates, P.C.
490 Norristown Road
Suite 150
Blue Bell, PA 19422
(215) 756-2424
nvalz@msn.com

**CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF) on this 24th day of May 2024, upon all registered users who have entered their appearance in any way for this case in compliance with the Federal Rules of Bankruptcy Procedure and the Rules of the Eastern District of Pennsylvania.

Philadelphia, PA
May 24, 2024

                              RESPECTFULLY SUBMITTED,

                              ___/s/ Norman M. Valz_____
                              Norman M. Valz, Esquire (Pa. No. 61338)
                              Attorney for Defendants
                              Norman M. Valz & Associates, P.C.
                              490 Norristown Road
                              Suite 150
                              Blue Bell, PA 19422
                              (215) 756-2424
                              nvalz@msn.com