# EXHIBIT "B"

**NBOA Shareholders' Agreement**

SHAREHOLDERS' AGREEMENT

THIS SHAREHOLDERS' AGREEMENT ("Agreement") is made as of the 1st day of November 2013, by and among NATIONAL BROKERS OF AMERICA, INC., an Ohio corporation (the "Corporation"),

AND

ALAN REDMOND and JASON JORDAN (collectively the "Shareholders" and individually the "Shareholder").

Background

The Shareholders own all the issued and outstanding stock of the Corporation (the "Stock").

The Shareholders wish to protect against ownership of the Corporation by persons or entities who are not willing or able to continue the Corporation's policies and to insure the continuity of management of the Corporation. Accordingly, the Shareholders have agreed to restrict transferability of the Stock, require purchases and sales of the Stock in certain circumstances, and provide for certain other matters relating to the Corporation, all as more fully set forth in this Agreement.

The Shareholders have each contributed capital contributions to the Corporation. Alan Redmond has contributed $100,000.00 and Jason Jordan has contributed $1.00.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants herein contained, the Corporation and the Shareholders, INTENDING TO BE LEGALLY BOUND HEREBY, agree as follows:

ARTICLE I
SHAREHOLDERS

1.1  Outstanding Stock. At the date of this Agreement, there are issued and outstanding to the Shareholders the following number of shares of Stock:

| Shareholder | No. of Shares |
| --- | --- |
| Alan Redmond | 1 voting stock |
| Jason Jordan | 1 voting stock |

Received County of Berks Prothonotary's Office on 03/09/2017 11:25 AM Prothonotary Docket No. 14-17117

1.2. <u>Restrictions on Transfers of Stock</u>. No Shareholder shall, in any manner, transfer any Stock which it now owns or hereafter acquires, except as expressly set forth in this Agreement.

(a) The transfer, in any manner, of any Stock presently owned by Alan Redmond or Jason Jordan shall be restricted as follows:

(i) If Alan Redmond or Jason Jordan proposes to make a transfer of all or any of his Stock, he shall obtain the prior written consent of all the other Shareholders and of the Corporation to the proposed transfer. In the absence of such consent, Alan Redmond or Jason Jordan shall, prior to making a transfer, give to the Corporation written notice of his intention to make such transfer, setting forth the proposed transferee and the price and other terms and conditions of the proposed transfer, which notice shall constitute an offer (the "Offer") to sell such Stock to the Corporation. The Corporation shall have the option, exercisable in writing within thirty (30) days after receipt of the Offer, to purchase all or any portion of such Stock upon the terms and conditions set forth in the Offer.

The other Shareholders shall have the option, exercisable in writing within thirty (30) days after receipt of the Second Offer, to purchase all or any portion of such Stock in accordance with the Second Offer.

(b) If the Corporation and/or the other Shareholders do not purchase all of Alan Redmond's or Jason Jordan's Stock in accordance with Subsections (a) and (b) above, the Alan Redmond or Jason Jordan may transfer the remaining Stock to the transferee identified in the Offer at the price and under the terms and conditions of the Offer provided that the transferee agrees in writing to be bound by all of the terms and conditions of this Agreement. If such Transfer does not occur within six (6) months after the date of the Offer, the Selling Shareholder shall, prior to any transfer, again offer to sell its Stock to the Corporation and the other Shareholders in accordance with Subsections (i) and (ii) above.

1.3. <u>Mandatory Repurchase of Stock</u>.

(a) <u>Alan Redmond</u>. The parties intend that Alan Redmond shall continue to hold Voting Stock only for so long as he is employed by National Brokers of America, Inc. or actively engaged in the management of the Corporation. Accordingly, Alan Redmond shall sell to Jason Jordan, and Jason Jordan shall purchase from Alan Redmond, all of Alan Redmond's Stock in the Corporation at the price and upon the terms and conditions set forth in Sections 2.1 and 2.2 of this Agreement at such time as Alan Redmond fails to be employed by National Brokers of America, Inc. or actively engaged in its management or the management of the Corporation (collectively the "Mandatory Repurchase Event"). Should Jason Jordan be unable or unwilling to purchase said Stock from Alan Redmond within thirty (30) days of a Resolution of the Board of Directors declaring the occurrence of a Mandatory Repurchase Event, as applies to Alan Redmond, the Corporation shall purchase said Stock from Alan Redmond.

(b) <u>Jason Jordan</u>. The parties intend that Jason Jordan shall continue to hold the Voting Stock only for so long as he is employed by National Brokers of America, Inc. or actively engaged in the management of the Corporation. Accordingly, Jason Jordan shall sell to Alan Redmond, and Alan Redmond shall purchase from Jason Jordan, all of Jason Jordan's Stock in the Corporation at the price and upon the terms and conditions set forth in Section 2.1 and 2.2 of this Agreement at such time as Jason Jordan fails to be employed by National Brokers of America, Inc. or actively engaged in its management or the management of the Corporation (collectively the "Mandatory Repurchase Event"). Should Alan Redmond be unable or unwilling to purchase said Stock from Jason Jordan within thirty (30) days of a Resolution of the Board of Directors declaring the occurrence of a Mandatory Repurchase Event, as applies to Jason Jordan, the Corporation shall purchase said Stock from Jason Jordan.

1.4. <u>Additional Events Triggering Mandatory Repurchases</u>. Upon any of the following events, the Shareholder shall sell to the Corporation, and the Corporation shall purchase from such Shareholder, all of such Shareholder's Stock at the price and upon the terms and conditions set forth in Sections 2.1 and 2.2 of this Agreement:

(a) The filing of a petition by or against any Shareholder under any Federal or State bankruptcy, liquidation or insolvency statute or other debtor relief legislation, provided that in the case of a petition filed against a Shareholder, such petition is not dismissed within thirty (30) days after its filing; or

(b) The assignment by a Shareholder for the benefit of its creditors.

1.5. <u>Bylaws Vote</u>. The Principal(s) of a Shareholder, as equity owner(s) of each of the Shareholders, shall vote their shares of stock of each Shareholder in favor of a Resolution implementing bylaws provisions consistent with the purposes set forth in this Agreement and agree to take no action inconsistent with the purposes set forth in this Agreement.

ARTICLE II
GENERAL PROVISIONS

2.1. <u>Valuation of Securities</u>. The value of the Stock and the price to be paid therefor, in the event of a sale for which valuation under this Section is required, shall be as follows:

(a) The Shareholders and the Corporation agree that, upon the execution of this Agreement, and within thirty (30) days after the end of each fiscal year of the Corporation during the term hereof, the valuation of the Stock of the Corporation as of the end of the immediately preceding fiscal year shall be determined, and each valuation shall be stated in the Valuation Schedule attached hereto as Exhibit "A" and made a part hereof, which the Shareholders and the Corporation shall execute as evidence of agreement to the valuation. Each valuation of the Stock shall be binding and conclusive on the Corporation, on each Shareholder and on their respective successors and assigns, for purposes of this Agreement.

3

(b) In the event that, for any reason, the Shareholders and the Corporation shall have failed to fix and enter the valuation per share of the Stock on the Valuation Schedule, or, if more than twelve (12) months has passed since the last valuation, the value of such Stock, for the purposes of this Agreement, shall be the net book value of the Corporation, as determined in accordance with generally accepted accounting principles by the Corporation's independent certified public accountant, whose determination shall be final.

(c) The capital contribution of any Shareholder prior to the date of this Agreement, and evidenced hereby, shall be included in the valuation of said Shareholder's Stock.

2.2. <u>Manner of Payment</u>. The purchase price for the Stock valued pursuant to Section 2.1 hereof shall be paid in the following manner:

(a) Five percent (5%) of the total purchase price (the "Initial Payment") within sixty (60) days after the maturing of the obligation to purchase, and the balance in seventy-two (72) equal, consecutive monthly installments with interest on the unpaid balance from the due date of such Initial Payment at an annual rate equal to (i) the Wall Street Journal Prime Rate, as published in The Wall Street Journal, at the time of closing, or (ii) if greater, the minimum interest rate required at the time of closing under the Code or the regulations thereunder, to avoid the imputation of interest under Code Sections 1274 or 483 or any similar Code section then applicable, the first installment being payable on the first day of the first calendar month following the month in which the Initial Payment is made. Any installment may be prepaid at any time without premium or penalty.

(b) The obligation to pay the purchase price, as aforesaid, shall be evidenced by a promissory note (the "Note") executed and secured as follows:

(i) In the event of a sale to the Corporation, the Note shall be executed by the Corporation;

(ii) In the event of a sale to one or more of the other Shareholders, the Note or Notes shall be executed by the respective purchasing Shareholders, with respect to the Stock which each Shareholder purchases;

(iii) The Notes shall be secured by a pledge of the Stock sold, upon the following terms and conditions: After the Stock sold is registered in the name of the buyer, the buyer shall deliver the Stock to the seller endorsed in blank for transfer, and the seller shall retain and hold the Stock as security for the Note. Upon the occurrence of any of the events referred to in Subsection (c) of this Section, the seller shall, in addition to the exercise of any other available remedies, be entitled to offer the Stock at public or private sale. The seller shall be entitled to bid for and purchase any or all of the Stock at any such public sale, and if the seller is the successful bidder, the obligation of the buyer in default shall be deemed to be fully satisfied by the proceeds of the sale, even if insufficient to satisfy the obligations. Notice of foreclosure and all other statutory requirements of such sale shall be deemed waived by the buyer, except that the

Received County of Berks Prothonotary's Office on 03/09/2017 11:25 AM Prothonotary Docket No. 14-17117

buyer whose Stock is to be offered for sale shall be given ten (10) days' written notice of the time and place of such sale. The proceeds of any such sale shall be applied first to pay the expenses of conducting such sale, including reasonable legal fees incurred in connection therewith, then to pay any balance due the seller of such Stock by the buyer thereof, with any surplus to be paid to the buyer in default. Upon payment in full by a buyer of the purchase price to a seller, the seller shall immediately return to the buyer the Stock pledged with the seller. Further, during such pledge, but only so long as the buyer is not in default under its Note, the buyer shall exercise and enjoy all of the rights accruing from the ownership of said Stock.

(c) The Notes shall provide for acceleration of the entire unpaid balance and confession of judgment in the event of the following:

(i) Failure to pay any installment payment within twenty (20) days after written notice of failure to pay on its due date; and

(ii) If the Corporation is the purchaser: levy or attachment upon any of the assets of the Corporation, which is not removed within sixty (60) days from the making thereof, except that if the Corporation, in good faith, contests such levy or attachment, no default shall exist or be declared as long as the Corporation proceeds diligently and continually with such contest, or until all rights and time to contest the same have expired; or

(iii) The buyer is adjudicated a bankrupt, makes an assignment for the benefit of creditors, or a receiver is appointed for its assets and is not removed within thirty (30) days.

2.3. <u>Loans</u>.

(a) In the event that, at the time of the sale of all or a portion of the Stock hereunder to the Corporation, there are loans or other indebtedness of the Corporation payable to such Selling Shareholder, such loans or indebtedness shall be repaid at the same time and in the same manner as provided in Section 2.2 hereof.

(b) In the event that at the time of the sale of all or a portion of the Stock to anyone there are loans or other indebtedness of such Shareholder payable to the Corporation, such loans or other indebtedness shall be repaid to the Corporation out of the proceeds of such sale and each Shareholder hereby assigns to the Corporation the payments for such Stock first falling due to an amount sufficient to pay such indebtedness and any interest that may be or become due thereon.

2.4. <u>Resignations</u>. Upon delivery to the seller of the money and/or obligations required for the purchase of all of a Shareholder's Stock, the Principal(s) of such Shareholder shall resign from any office or directorship in, or employment by, the Corporation.

2.5. <u>Endorsement on Certificates</u>. Upon the execution of this Agreement, the certificates for the Stock subject hereto shall be surrendered to the Corporation and endorsed as follows:

Received County of Berks Prothonotary's Office on 04/09/2017 11:45 RM Prothonotary Docket No. 14-17117

5

> "This certificate is subject to, and is transferrable only upon compliance with, a Shareholders' Agreement dated as of November 1, 2013, by and among National Brokers of America, Inc. and its Shareholders, a copy of which is on file in the office of the Corporation."

After endorsement, the certificates for the Stock shall be returned to the Shareholders, who shall be entitled to exercise all rights of ownership of such certificates under the Articles of Incorporation of the Corporation. All certificates for Stock hereafter issued to or transferred shall bear such endorsement.

2.6. <u>Termination of Agreement</u>. This Agreement shall terminate upon the occurrence of any of the following events:

(a) Cessation of the Corporation's business;

(b) Bankruptcy, receivership or dissolution of the Corporation;

(c) The voluntary agreement of the then Shareholders; or

(d) As to any Shareholder, upon its ceasing to own any Stock in the Corporation, after which time it shall no longer be included within the meaning of the term "Shareholder" or "Shareholders."

Upon termination of this Agreement, each Shareholder shall cause to be surrendered to the Corporation certificates for the Stock registered in its name, and the Corporation shall issue to it like certificates for the Stock without the endorsement set forth in Section 2.5 hereof.

2.7. <u>Reduction of Capital</u>. If, at the time the Corporation is required to make payment of the purchase price for Stock hereunder, its surplus is insufficient for such purpose, the Corporation and the Shareholders shall promptly take all required action to reduce the capital of the Corporation to the fullest extent possible to permit the purchase of such Stock by the Corporation.

2.8. <u>Further Assurances</u>. Each of the parties agrees to take such action and execute and deliver such documents as may be reasonably necessary or appropriate to effectuate the terms of this Agreement.

2.9. <u>Applicable Law</u>. This Agreement shall be governed by and interpreted and enforced in accordance with the substantive laws of the Commonwealth of Pennsylvania, without reference to the principles governing the conflict of laws applicable in that or any other jurisdiction.

2.10. <u>Headings</u>. The paragraph headings of this Agreement are for convenience of reference only and do not form a part of the terms, conditions or covenants of this Agreement or give full notice thereof

Received County of Berks Prothonotary's Office on 03/09/2017 11:45 AM Prothonotary Docket No. 14-17117

Received County of Berks Prothonotary's Office on 03/09/2017 11:25 AM Prothonotary Docket No. 14-17117

2.11.  <u>Entire Agreement</u>. This Agreement constitutes the entire understandings among the parties hereto with respect to the subject matter hereof, and no other representations or covenants have induced any party hereto to enter into this Agreement. This Agreement may not be amended or modified in any manner except by a written agreement executed by the parties hereto.

2.12.  <u>Rights, Obligations and Remedies</u>.

(a)  This Agreement shall be binding on, and inure to the benefit of, the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

(b)  None of the parties hereto may assign, transfer or otherwise dispose of any of their rights or obligations under this Agreement. All rights and obligations under this Agreement shall inure to and be binding upon the parties hereto and each of their respective heirs, personal representatives, successors and assigns. The rights and obligations under this Agreement are several, with each party being completely free to enforce any or all rights or obligations under this Agreement against any other party with or without the concurrence or joinder of any other party. The Stock is unique, and the damages that might result to any party by breach of this Agreement by any other party are difficult to determine, and, therefore, in addition to all of the other remedies that may be available under applicable law, any party shall have the right to equitable relief, including, without limitation, the right to enforce specifically the terms of this Agreement by obtaining injunctive relief against any party violating its terms.

2.13.  <u>Notices</u>. All notices, offers or exercises of options required or permitted by this Agreement shall be in writing and sufficiently given only if mailed by certified or registered mail, return receipt requested, postage prepaid, to the party to receive said notice. The address of the Corporation shall be its principal place of business, the address of a Shareholder shall be the last known address of said Shareholder on the books of the Corporation, and the address of any Principal or any other person or entity entitled to notice hereunder shall be the address provided for that Principal, person or entity to the Corporation. Any Shareholder, Principal, person or entity may change his, her or its address by written notice to the Corporation. Except as otherwise expressly provided herein, all notices given by mail shall be deemed as given when mailed.

2.14.  <u>General</u>.

(a)  In computing a number of days for any purpose under this Agreement, all days shall be counted including Saturdays, Sundays and holidays.

(b)  Words used in this Agreement, regardless of the gender or number specifically used, shall be deemed and construed to include any other gender, masculine, feminine or neuter, and any other number, singular or plural, as the context requires. The term "person" includes a corporation, partnership or other association, as well as a natural person.

7

Received County of Berks Prothonotary's Office on 03/09/2017 11:25 AM Prothonotary Docket No. 14-17117

(c) No course of dealing by any party or by the holder of any note that may be issued as permitted by this Agreement, nor any delay or failure on the part of any person or entity to exercise any right shall operate as a waiver of such right or otherwise prejudice such person's or entity's rights, powers and remedies, nor shall any waiver of one breach be construed as a waiver of any rights or remedies with respect to any subsequent breach.

(d) If any part of this Agreement is found to be invalid, illegal or unenforceable with respect to any person or entity or set of circumstances under any present or future laws in effect at any time during the term of this Agreement, then and in that event it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and it is also the intention of the parties that in lieu of the part of this Agreement that is invalid, illegal or unenforceable, there shall be added as part of this Agreement a provision as similar in terms to such invalid, illegal or unenforceable part as may be possible and be valid, legal and enforceable.

(e) This Agreement may be executed in several counterparts, each of which is an original, and any Shareholder may become a party hereto be executing a counterpart hereof. This Agreement and any counterpart so executed shall be deemed to be one and the same instrument. It shall not be necessary in making proof of this Agreement or any counterpart to produce or account for any of the other counterparts. This Agreement shall be deemed to have been executed and shall become binding when one or more counterparts have been executed by each of the parties.

[SIGNATURES TO APPEAR ON FOLLOWING PAGE]

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND HEREBY, the parties have executed this Agreement, under seal, as of the day and year first above written.

_____                    _____
Alan Redmond                                 Jason Jordan

Received County of Berks Prothonotary's Office on 03/09/2017 11:25 AM Prothonotary Docket No. 14-17117

EXHIBIT "A"