**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL BROKERS OF AMERICA, INC. | Bankruptcy No. 19-15488-pmm |
| | Chapter 7. |

**RESPONSE AND CROSS-MOTION TO ANNUL THE AUTOMATIC STAY AND DISMISS BY JASON SCOTT JORDAN, JOEL A. READY, AND CORNERSTONE LAW FIRM, LLC IN OPPOSITION TO DEBTOR'S MOTION FOR VIOLATION OF THE AUTOMATIC STAY**

Jason Scott Jordan, Joel A. Ready, Esquire (incorrectly named "Joel Reedy" by Debtor), and Cornerstone Law Firm, LLC (the "Cross-Moving Creditors"[1]) hereby respond in opposition to the Debtor's Motion for Violation of the Automatic Stay. [ECF No. 179] and cross-move for retroactive annulment of the automatic stay, under 11 U.S.C. §§ 362(d) and 549(c) and to dismiss this case under Fed. R. Bankr. P. 1017.

**INTRODUCTION**

Cross-Moving Creditors do not consent to the order requested by Debtor. The abuses in this proceeding are legion and we humbly ask this Court to bring that to an end. The Court should deny the Debtor's Motion and dismiss this case or, alternatively, retroactively annul the automatic stay. Debtor has no assets or income. No creditors' meetings have been held since this case was filed in 2019. The violation of the automatic stay was a ministerial error by the Berks County Prothonotary, not by Jordan or his counsel, and a motion to correct the judgment is pending, or momentarily will be, in the Berks County Court of Common Pleas. The Trustee in this case has settled all adversarial claims with Alan Christopher Redmond and Bene Market, LLC, which

---

[1] This short-hand expression is used for convenience only because Attorney Ready is not, in his personal capacity, a creditor of Alan Christopher Redmond but is the managing partner of Cornerstone Law Firm, LLC.

1

settlement this Court approved two years ago and without any objection by Debtor. There is no valid basis for extending the automatic stay, much less continuing this case at all. The Debtor's Motion makes a mockery of justice and continues to abuse this proceeding for the sole benefit of Debtor's sole manager, Alan Christopher Redmond.

## STATEMENT OF FACTS

**A.    Response to Debtor's Statement of Facts.**

Cross-Moving Creditors specifically deny the following paragraphs in the Statement of Facts of Debtor's Motion: 2, 4, 6, 10, 12. [ECF No. 179]. In a bad faith maneuver for the continued benefit of Alan Christopher Redmond, Debtor tries to mislead this Corut by recharacterizing the personal liability of Redmond as if Jason Scott Jordan's claim was a breach of contract action. As shown in Part I of the Argument Section, infra, the Hon. TIMOTHY J. ROWLEY of the Berks County Court of Common Pleas ("Common Pleas") entered findings of fact that Alan Christopher Redmond froze-out Jason Scott Jordan from the management and as shareholder of National Brokers of America, Inc. ("NBOA") and then fraudulently misappropriated $15,496,492 while acting in a fiduciary capacity, of which half that amount belonged to Jordan. Common Pleas specifically found that Redmond had "misappropriated" such property "and did not share" the same "with Jordan." [ECF No. 179-2, Findings of Fact ¶ 78, at 14]. By reason of this tort liability for fraudulent misappropriation, Common Pleas awarded half of the appropriated amount as compensatory damages and further awarded punitive damages of $5,000,000.00—further evidencing that Judge Rowley saw this as a tort action.

Additionally, Judge Sprecher's Order filed March 31, 2022 was made in error and without any request by the Cross-Moving Creditors. [ECF No. 179 ¶ 10]. Where opposing Redmond's Motion for Post-Trial Relief, we asked Common Pleas to deny such Motion and to direct the Prothonotary "to immediately enter the verdict as a judgment and to index the same." [Exhibit A

2

(Proposed Order filed with Jordan's Brief in Opposition)]. Because Judge Rowley's Verdict was against Redmond only, we never asked for judgment against Debtor. Paragraph 12 of Debtor's Motion is incorrect because Redmond, personally, was the only party who appealed from the judgment to the Superior Court of Pennsylvania. NBOA did not appeal. [Exhibit B]. Moreover, the Court should judicially notice from the docket in Common Pleas that NBOA never filed any motion to correct the judgment that was erroneously entered against it by the Berks County Prothonotary. [Exhibit F]. Now that Debtor has called that to our attention for the first time, Jordan has contemporaneously filed, or will file before this Court's hearing date, a motion to correct the judgment on June 13, 2024, which Common Pleas can grant because this was a ministerial error by the Prothonotary in the entering of the judgment, not the rendering of judgment.

Cross-Moving Creditors admit the following paragraphs in the Statement of Facts of Debtor's Motion: 1, 5, 7, 8-9, 11, 13-21. From those facts the Court should take special note that Jordan's original suit against Redmond in Common Pleas has existed since 2014. Jordan commenced the action against Redmond and Bene Market, LLC, in the Berks County Court of Common Pleas at Docket No. 22-11757 after this Court had approved a settlement between the Trustee and Redmond and Bene Market, LLC, the Trustee having declined to pursue avoidance claims against them. Debtor had notice of this Motion and did not object.

**B.     Abuses of Chapter 7 Petition and No Valid Bankruptcy Purpose for Continuing This Proceeding**

The Court may judicially notice that NBOA filed its first Chapter 7 Petition in this Court on February 20, 2019, at Case No. 19-11045. Common Pleas had attached NBOA and Redmond for trial with Jason Scott Jordan scheduled for February 25, 2019. [Exhibit D]. On April 4, 2019, this Court dismissed the Petition.

NBOA filed the instant Chapter 7 Petition with this Court on September 3, 2019. [ECF No.

3

1]. At that time, trial with Redmond and Jordan was scheduled to be held on September 9, 2019 in Common Pleas. [Exhibit E]. This Court administratively dismissed the Chapter 7 Petition on September 4, 2019 for failure to submit required documentation with the Petition. [ECF No. 6]. Debtor then requested, and obtained, an extension of the automatic stay while it cured its deficiencies with its Petition. [ECF Nos. 9, 14].

The Trustee moved to approve a settlement of avoidance claims with Alan Christopher Redmond and Bene Market, LLC. [ECF No. 153]. Debtor had notice where it was served on its counsel, Attorney Norman Valz. [ECF No. 153-1 (Certificate of Service on Norman Valz, Esquire); see also, ECF No. 133 for Attorney Valz's Entry of Appearance for NBOA]. The Court approved that settlement on April 19, 2022. [ECF No. 156].

The Court may judicially notice from its own docket that, despite the original petition being filed on September 3, 2019, no creditors' meetings have been held under 11 U.S.C. § 341 in this case. Because NBOA has no remaining assets, there is no purpose in holding a creditors' meeting. On November 27, 2023, the Court approved an application for the Trustee's compensation at $85.64. [ECF No. 177]. For the period of Noember 9, 2021 to October 31, 2023, the Court approved the Trustee's compensation for $10,012.00. [ECF No. 169].

Since its original Chapter 7 Petition was filed in 2019, NBOA has not made any showing whether it has any income or assets as of now.

**C.    Reliance and Severe Prejudice to Jason Scott Jordan.**

In the Adversarial Proceeding at Case No. 20-00016, this Court lifted the stay as to Alan Christopher Redmond by Order filed on January 6, 2021. Jason Scott Jordan relied upon that Order in continuing his State claims against Redmond. In Common Pleas, Jordan incurred attorneys' fees and expenses relating to (1) preparation and conduct of trial on September 20 and 21, 2021; (2) defending a post-trial motion by Redmond; and (3) defending an appeal to the Superior Court of

4

Pennsylvania at Docket No. 642 MDA 2022; and (4) opposing an allocatur petition in the Supreme Court of Pennsylvania at Docket No. 135 MAL 2024. [Exhibit F (Superior Court Docket); Exhibit G (Supreme Court of Pennsylvania Docket)]. As a result, Jordan has incurred approximately $122,832.75 in attorneys' fees and costs in reliance on the Court's Order which lifted the stay as to Redmond [Exhibit H], in addition to obtaining the $13,105,197.20 verdict against Redmond with interest. To date, Redmond has not paid anything towards the judgment.

**D.    Redmond has Stripped Bene Market, LLC of All Assets.**

In Common Pleas, after the stay pending appeal was lifted, Jordan propounded interrogatories in aid of execution. A few weeks ago, Redmond has represented to Common Pleas in writing "that Bene Market, LLC is not an active operational company and possesses minimal assets" [Exhibit I ¶ 15 (May 28, 2024)]. Consequently, Redmond has now stripped Bene Market, LLC of its assets to further avoid his creditor, Jason Scott Jordan.

## STANDARD OF REVIEW

Under Fed. R. Bankr. P. 1017(a), the Court can dismiss a Chapter 7 proceeding "for want of prosecution or other cause," if a hearing is held. The Court may additionally dismiss this case as an abuse of a Chapter 7 proceeding. Fed. R. Civ. P. 1017(e).

## ARGUMENT

**I.    Debtor's Arguments Fail on the Merits: No Valid Bankruptcy Purpose Exists in Continuing this Proceeding or Extending the Stay, and Adversarial Claims against Redmond and Bene Market, LLC have been Settled by the Trustee and Approved by the Court without Debtor's Objection.**

As shown in Part II, <u>infra</u>, the Berks County Prothonotary committed a ministerial error that's easily correctable in the Berks County Court of Common Pleas and a motion to correct the judgment will be pending there for that purpose. Debtor then seizes that opportunity in order to continuing an abusive pattern of shielding the personal liability of Alan Christopher Redmond.

5

Debtor's arguments fail on the merits and its cited caselaw is inapposite. Because Debtor has no income and no remaining assets whatsoever to be liquidated for creditors and has not even bothered to hold any creditors' meetings under 11 U.S.C. § 341, there is no valid bankruptcy purpose in continuing this Chapter 7 proceeding. "An absence of a valid bankruptcy purpose will generally disqualify a petitioner from invoking the jurisdiction of this Court." In re Dewey Commer. Investors, L.P., 503 B.R. 643, 650-51 (Bankr. E.D. Pa. 2013) (citation omitted). The Court should deny the Debtor's motion and dismiss this case for want of prosecution and for substantial abuse of a Chapter 7 proceeding. Here, that abuse is presumed because the Debtor has $0.00 income, being less than $15,150, 11 U.S.C. § 707(b)(2)(A)(i), and where Debtor has no assets justifying any creditors' meeting or further action. There is nothing left to be done here except to dismiss.

Debtors cites caselaw about "unusual circumstances" which justify extending the automatic stay for the benefit of third persons. Debtor cites LTL Mgmt., LLC v. Those Parties Listed on Appendix A (In re LTL Mgmt., LLC), 638 B.R. 291 (Bankr. D. N.J. Feb. 25, 2022),[2] where a debtor had successor liability for toxic, asbestos-containing talc, skin care products and, after filing for a Chapter 11 petition, asked a bankruptcy court to extend the automatic stay to its parent company and affiliates under a Funding Agreement to pay for the talc litigation management and the expenses of a bankruptcy proceeding. The court granted the Motion. It was reversed by the U.S. Court of Appeals for the Third Circuit for failing to dismiss the case under 11 U.S.C. § 1112(b) for lack of good faith. LTL Mgmt., LLC II, 64 F.4th 84 (3d Cir. 2023). For purposes of Chapter 11, the facts of that case did not show the debtor was financially distressed. Id. at 101. That debtor wanted to use the bankruptcy system to resolve any toxic exposure claims

---

[2] To artfully avoid any examining of the case's subsequent history, Debtor cites the Case Number but conveniently omits the published citation in the *Bankruptcy Reporter*.

6

was insufficient: Debtor's "belief that this bankruptcy creates the best of all possible worlds for it and the talc claimants **is not enough**, no matter how sincerely held." Id. at 111 (emphasis added).

LTL Mgmt., LLC stands for the unremarkable proposition that shielding the liability of corporate insiders, i.e., Alan Christopher Redmond, is not an end in itself which justifies a good faith bankruptcy purpose.

Debtor's insistence on whether the automatic stay should cover Alan Christopher Redmond and Bene Market, LLC is now irrelevant and barred by waiver, estoppel, and laches. By reason of the Trustee's Settlement of the avoidance claims against these persons, which this Court approved, that outcome cannot be changed now. Even with Bene Market, LLC as a successor or continuation of NBOA, with substantially all of its assets, Debtor waived this claim by failing to object to the Trustee's settlement, where the Debtor had notice under Fed. R. Bankr. P. 9019, being represented by Attorney Norman Valz. [ECF No. 153-1 (Certificate of Service on Norman Valz, Esquire); see also, ECF No. 133 for Attorney Valz's Entry of Appearance for NBOA]. Debtor has therefore waived any objections to that settlement and offers no explanation (nor can it do so) that satisfies the strictures of Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60.

Additionally, all of the facts on which Debtor relies upon were known to the Debtor at the time this Court granted relief from the automatic stay as to Redmond on January 6, 2021, at Adversarial Proceeding No. 20-00166-pmm. Jordan reasonably and justifiably relied on the Court's order and incurred substantial litigation expenses of proceeding to trial, defending a post-trial motion, and defending the judgment on appeal before the Superior Court and an allocatur petition before the Supreme Court of Pennsylvania. Debtor is equitably estopped from relitigating that question. Okan's Foods v. Windsor Assocs. Ltd. P'ship (*In re* Okan's Foods), 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998). That Jordan got a favorable verdict in Common Pleas does not alter

the underlying facts that were known to Debtor and its controlling manager, Alan Christopher Redmond, as of January 6, 2021. There is, therefore, no new or unforeseen facts that would justify avoiding the settlement and, if anything, the situation is futile now. Redmond has now stripped out Bene Market, LLC of its assets, leaving it just as much of a shell as he did Debtor.

Debtor also mischaracterizes Judge Rowley's Decision and Verdict against Alan Christopher Redmond. Judge Rowley entered a verdict of $13,105,197.20 against Redmond only, being damages caused by Redmond, not Debtor. Judge Rowley found, among other things:

> The Shareholders Agreement and Amended Bylaws do not vary the applicable law which affords redress in this situation—i.e., Redmond acting *ultra vires* to freeze Jordan out of NBOA and keep all benefits of NBOA solely for himself.

[ECF No. 179-2, Findings of Fact ¶ 48].

> Redmond knowingly and intentionally lied to C. Malcolm Smith [the NBOA accountant] to induce the materially false statement on the 2014—2017 NBOA [tax] returns that Redmond was the owner of 100% of the NBOA shares.

[Id. ¶ 50 (alterations added)].

> Following the Freeze Out, Redmond paid for his personal (and extravagant) expenses (including a strip club, Babies-R-Us, jewelers, and $118,807.27 at Neiman Marcus) directly from the NBOA financial account and the same are recorded on the NBOA General Ledger (Plaintiff's Exhibits 12-16) and accurately summarized on Plaintiff's Exhibit 18 in the amount of $604,126.45 . . .

[Id. ¶ 51].

> Redmond provided no evidence to suggest that the $116,738.60 in cash taken by Redmond from NOBA accounts from the time of the Freeze Out through 2/2/2018 was anything other than cash misappropriated by Redmond from NBOA that was not reported on any tax return and thus it is found that such funds were knowingly, wrongfully taken by Redmond from NBOA in addition to funds reported on tax returns.

[Id. ¶ 56].

> Thus, the sum of money that Redmond misappropriated from NBOA and Bene Market, LLC, and did not share with Jordan, equals $15,496,492.

[Id. ¶ 78]. These monies were misappropriated by Redmond because made "without Jordan's consent" [id. ¶¶ 60, 70, 72-76], and the "consent of both Redmond and Jordan was required to take action under the Bylaws." [Id. ¶ 18]. Compensatory damages were awarded that Jordan was entitled to half of that $15,496.492 (i.e., $8,105,197.20) and Judge Rowley awarded $5,000,000.00 as punitive damages arising within Redmond's fraudulent misappropriation while acting in a fiduciary capacity. [Id. at 15 (Verdict Slip)].

Redmond tried the "empty chair" defense at trial, i.e., blaming his actions on NBOA, but Judge Rowley found that Redmond had direct tort liability by virtue of being solely in control over NBOA and committing fraud or defalcation while acting in a fiduciary capacity. It was not NBOA that froze out and defrauded Jason Scott Jordan and misappropriated property. Rather, it was Redmond himself who did that. Contrary to the caselaw cited by Debtor, this is not a situation where the Debtor and a third-party have joint-liability by reason of co-signing a commercial mortgage and promissory note for a bona fide business. Contra McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 508 (3d Cir. 1997) (mortgage and note on a restaurant business). Neither is this joint liability for defective products. Contra A.H. Robins Co. v. Piccini, 788 F.2d 994, 996 (4th Cir. 1986) (Dalkon Shield tort cases). Nor is this joint-liability for defamation. Contra In re Philadelphia Newspapers, LLC, 407 B.R. 606, 609-10 (E.D. Pa. 2009). This is Redmond's *personal*, tort liability only.

Debtor predicates its argument on Judge Rowley's Decision and Verdict. But that was rendered on **December 20, 2021**. Debtor offers no explanation why it sat on its rights for 3.5 years. No, Debtor did not appeal to the Superior Court of Pennsylvania — only Redmond did, and Attorney Norman Valz signed the Notice of Appeal and knows that as a fact. This is an unreasonable and unjustified delay by Debtor. Jason Scott Jordan is substantially prejudiced as a

9

result, because Redmond has now stripped Bene Market, LLC of its assets, leaving it as a shell, and Jordan has incurred approximately $122,832.75 in attorneys' fees, costs, and expenses since the Court lifted the stay. To extend the automatic stay serves no purpose than to shield Redmond in his personal, tort liability to Jordan, which Debtor does not share. Using this proceeding to shield Redmond, who may file for bankruptcy himself but refuses to do so, while relieving Redmond of any obligations as a debtor, is a complete abuse of this Chapter 7 proceeding. Accordingly, we have carried our burden of proving that Debtor is guilty of laches here and continues this proceeding in bad faith. *In re* Energy Future Holdings Corp., 904 F.3d 298, 310 (3d Cir. 2018).

Because no valid bankruptcy purpose exists and Debtor continues to abuse this proceeding for the personal benefit of Alan Christopher Redmond, the Court should deny Debtor's Motion and dismiss this proceeding finally. There's nothing left to be done here.

**II.    There Was No Violation of the Automatic Stay by Jason Scott Jordan, Joel A. Ready, Esquire, and Cornerstone Law Firm, LLC and This Court Can Retroactively Annul the Stay or Apply Laches.**

**A.    The Error was Ministerial by the Berks County Prothonotary.**

Debtor mischaracterizes both how a ministerial error occurred in Common Pleas and the proper remedy in this Court. The entry of judgment against NBOA in the Berks County Court of Common Pleas was a ministerial error committed by the Berks County Prothonotary only and is easily correctable in that court, where a motion for that purpose is now pending. The error is ministerial because it resulted from the *entering* of judgment on the docket, not the *rendering* of judgment in the December 20, 2021 Decision and Verdict by Judge Rowley. Judge Rowley's Verdict did not render judgment for or against NBOA, and therefore his honor's Decision and Verdict did not violate the automatic stay but was entirely consistent with the Court's Order which lifted the stay as to Alan Christopher Redmond. There is no basis for sanctions against Jason Scott Jordan, Joel A. Ready, Esquire, and Cornerstone Law Firm, LLC, because we neither filed a

praecipe nor asked for judgment to be entered against NBOA — and Debtor presents the Court with no evidence to the contrary while falsely asserting that we are "violat[ing] the automatic stay."

### B. The Appropriate Remedy is Retroactively Annulling the Stay.

Neither does the Debtor brief the Court with appropriate authority on the remedy when the automatic stay is violated by a ministerial error in the state court. Debtor, for instance, improperly asks the Court to dismiss "the entire *verdict* and judgment in favor of Jordan in the Berks Matter" [ECF No. 179, at 14 (emphasis added)], even though Judge Rowley's Decision and Verdict on December 20, 2021 was expressly authorized by the Court's order to lift the stay and which is patently calculated to benefit Alan Christopher Redmond.

Here, the Court can (1) dismiss the Motion on the basis of laches (and on the same grounds as our Motion to Dismiss, pending before the Court); (2) partially void the judgment in Common Pleas to the extent of NBOA only (thereby preserving the judgment as to Alan Christopher Redmond); or (3) retroactively annul the stay. Under any of those remedies, however, it bears mention there is no dismissal or vacatur of the Decision and Verdict rendered on December 20, 2021 because that did not, in itself, violate the automatic stay and it works a manifest injustice for the parties to relitigate trial after this Court expressed allowed that trial to take place and the Superior Court of Pennsylvania affirmed the judgment on appeal. As the U.S. Court of Appeals for the Third Circuit has set forth:

> We have indeed held that actions taken in violation of the stay are void. However, this Court and others have held that actions in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay.

*In re* Myers, 491 F.3d 120, 127 (3d Cir. 2007) (citations omitted). Consequently, "A bankruptcy court has the authority to make exceptions to and to annul the automatic stay under 11 U.S.C. § 362(d)." Id. "We reaffirm that actions in violation of the stay are void but retroactively ratifiable

if the stay is annulled, as this conclusion gives courts flexibility to resolve conflicts involved in the resolution of significant claims and reflects the most logical interpretation of § 326(d) of the Bankruptcy Code and other statutes, such as 11 U.S.C. § 549(c), which allow for other forms of retroactive stay relief." Id. at 128.

In determining whether to retroactively annul the automatic stay, the Court is guided by the following equitable considerations: (1) "Every court of appeals to consider the issue has held that whether the filing" of the bankruptcy petition "was in bad faith is relevant to whether the bankruptcy court should annul the automatic stay." Myers, 491 F.3d at 128 (citing Mataya v. Kissinger (In re Kissinger), 72 F.3d 107 (9th Cir. 1995)). (2) Retroactive annulment is proper where "the failure to obey the stay was caused by the state court judge, not the creditor; and not annulling the stay would either lead to nonsensical results, by submitting the same case to the jury that had just rendered a decision, or impose an unwarranted hardship on the creditors, since retrial would be costly." Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 109 (9th Cir. 1995). (3) Whether the debtor remains "stealthily silent" when it knew the automatic stay was being unknowingly violated, because "[w]e do not think Congress envisioned any such misuse of the automatic stay." In re Smith Corset Shops, 696 F.2d 291, 977 (1st Cir. 1982), followed by, In re Stamper, 2008 Bankr. LEXIS 733, at *14-15 (Bankr. D. N.J. Mar. 17, 2008).

All three considerations are met here. On the same grounds argued in Part IV, infra, no valid bankruptcy purpose is being furthered in this proceeding. Redmond twice caused NBOA to file its Chapter 7 petition on the eve of trial in the Berks County Court of Common Pleas to avoid liability to Jordan. After the Court lifted the automatic stay as to Alan Christopher Redmond, no good faith basis to continue this proceeding for NBOA has occurred. Instead, the Trustee moved for the Court to approve a settlement of an avoidance claim with Redmond and Bene Market,

LLC—and the Court approved that settlement on April 19, 2022. [ECF No. 156]. The violation of the automatic stay as to NBOA was a ministerial error committed by the Berks County Prothonotary, not by any creditor. NBOA remained stealthily silent when the ministerial error occurred and did not petition Common Pleas to correct the judgment, where Common Pleas has authority to do so notwithstanding the pendency of appeal. Pa.R.A.P. 1701(b)(1); Maize v. Atlantic Refining Co., 41 A.2d 850, 854-55 (Pa. 1945) ("It would be intolerable if a verdict may be entered erroneously by the clerk, and the court be powerless on the next day to correct it." (quotation omitted)); see also, Okafor v. Okafor, No. 14-21-00483-CV, 2023 Tex. App. LEXIS 202, at *12 (Jan. 12, 2023) ("A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered."); Escobar v. Escobar, 711 S.W.2d 230, 231 (Tex. 1986) ("A judicial error is an error which occurs in the *rendering* as opposed to the *entering* of a judgment." (emphasis in original)).

To void Judge Rowley's Decision and Verdict, as well as the judgment in Common Pleas, creates nonsensical results as applied to Redmond and creates an unwarranted hardship on Jordan after having incurred the expenses of conducting a trial, defending post-trial motions, and defending the judgment on appeal to the Superior Court of Pennsylvania and by allocatur petition to the Supreme Court of Pennsylvania. Debtor's Motion should be denied or, in the alternative, the Court should retroactively annul the automatic stay.

    **C.**    **The Affirmative Defense of Laches.**

In the alternative to retroactively annulling the automatic stay, the Court can independently dismiss Debtor's Motion as barred by laches (1) by having "unreasonably and inexcusably delayed" in seeking relief from the Court and (2) the creditor "would be seriously prejudiced if the state court order is violated." Matthews v. Rosen, 739 F.2d 249, 251 (7th Cir. 1984), followed by, Terrace Hous. Assocs. v. United States Department of Health & Human Servs. (*In re* Terrace

13

Hous. Assocs.), 2018 U.S. Dist. LEXIS 203875, at *9 (E.D. Pa. Dec. 3, 2018) (in the absence of statute, "the equitable doctrine of laches may serve to protect defendants against unreasonable, prejudicial delay in the prosecution of claims against them."). Because laches is an affirmative defense, the burden of proof for both elements is on the creditor. EEOC v. A&P, 735 F.2d 69, 80 (3d Cir. 1984). In Matthews, "A 33-month delay rarely can be reasonable unless excused." Matthews, 739 F.2d at 251.

Here, Debtor waited 3.5 years or 42 months. That is an unreasonable and unjustified delay. Jordan is exceptionally prejudiced because he incurred $88,543.31 in substantial litigation expenses of proceeding to trial, defending a post-trial motion, and defending the judgment on appeal before the Superior Court and an allocatur petition before the Supreme Court of Pennsylvania. Furtehrmore, Jordan should not be deprived of his $13,105.197.20 verdict after 10 years of litigation in Common Pleas. We have carried our burden of proving laches such that Debtor's Motion should be denied.

## CONCLUSION

WHEREFORE, based on the foregoing, Debtor's Motion should be dismissed or, alternatively, the Court should retroactively annul the automatic stay as to Docket No. 14-17117 in the Berks County Court of Common Pleas; and the Court should grant the Cross-Motion to dismiss this case with prejudice under Fed. R. Civ. P. 1017; and such other relief as the Court deems necessary, just, or appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: June 17, 2024    By:    /s/ Daniel Hong
Daniel Hong, Esquire
I.D. # 332097
8500 Allentown Pike, Suite 3

Blandon, PA 19510
(610) 926-7875

/s/ Joel A Ready
Joel A. Ready, Esquire
I.D. # 321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875