IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL BROKERS OF AMERICA, INC. | Bankruptcy No. 19-15488-pmm<br><br>Chapter 7. |

**REPLY IN OPPOSITION TO DEBTOR'S AND ALAN CHRISTOPHER REDMOND'S MOTION AND IN SUPPORT OF CROSS-MOTION BY JASON SCOTT JORDAN, JOEL A. READY, AND CORNERSTONE LAW FIRM, LLC**

Jason Scott Jordan, Joel A. Ready, Esquire (incorrectly named "Joel Reedy" by Debtor), and Cornerstone Law Firm, LLC (the "Cross-Moving Creditors"1) hereby file this Reply in opposition to the Debtor's Motion for Violation of the Automatic Stay [ECF No. 179], joined by Intervenor Alan Christopher Redmond [ECF No. 189], and in support of their request for retroactive annulment of the automatic stay, under 11 U.S.C. §§ 362(d) and 549(c).

**SUPPLEMENTAL FACTS**

**I.     Debtor Opposes Correcting the Judgment Unless It's Vacated against Alan Christopher Redmond.**

On June 17, 2024, Jason Scott Jordan filed a Motion to Correct the Judgment in the Berks County Court of Common Pleas. [Exhibit A]. On July 10th, the National Brokers of America (NBOA), represented by Normal Valz, Esquire, filed a Brief in Opposition. [Exhibit B]. As can be expected, NBOA misrepresents the law, erroneously claiming that Common Pleas cannot correct the judgment under the 30-day rule in 42 Pa.C.S. § 5505 but makes no attempt to distinguish the authorities we cited that Section 5505 does not restrict the inherent power to correct judgments. [Ex. A ¶ 4 (citing Commonwealth v. Holmes, 933 A.2d 57, 65 (Pa. 2007))]. Then, amazingly, NBOA asks that the entire judgment be stricken — without explanation why that is allowed under Section 5505 — claiming "it was entered in error and contravention of the Automatic Stay

1

provisions of the U.S. Bankruptcy Code." [Ex. B at 1]. Therefore, Debtor continues to abuse the bankruptcy system as a litigation strategy for the sole benefit of Alan Christopher Redmond's personal liability to Jason Scott Jordan.

II.     **Debtor Did Not Incur Any of These Exorbitant and Duplicative Attorney's Fees Which Were for Alan Redmond's Personal Defense.**

The Debtor filed a Certification in this Court on July 10, 2024. [ECF No. 201]. The Certification establishes that all attorneys' fees from the lawsuit of Jordan v. Bene Market, LLC and Alan Christopher Redmond, C.A. No. 22-11757 (Berks Cnty. Com. Pl.) (the "Bene Market, LLC Litigation"), as well as the Debtor's instant Motion to Enforce Automatic Stay, were not incurred by the Debtor. The Certification provides that Alan Christopher Redmond, individually, "is responsible for the payment for legal fees necessary to file and prosecute the Debtor's motion to Enforce Automatic Stay ('Motion to Enforce') as well as the fees for his Motion to Intervene concerning that Motion." [ECF No. 201 ¶ 3]. As to the Bene Market, LLC Litigation, Redmond, individually, "is also responsible for the payment of the legal fees necessary to defend" the same. [Id. ¶ 4].

Because Alan Christopher Redmond is a party to the Bene Market, LLC Litigation, he had an independent basis to incur these fees for his own defense.

The fees in the Certification also reflect exorbitant rates and duplicative work. The fees charged by Attorney Eric Reed, of Fox Rothchild, reflect an hourly rate of $695.00. [ECF No. 201 ¶ 21]. George Bochetto, Esquire charged $825.00/hour. [Id., Exhibit C (entry for May 14, 2024)]. Reasonableness in Berks County is measured at $350/hour. The market here is Berks County, not Philadelphia.

The Certification gives no explanation why six attorneys are working on the same matters: (1) David P. Heim, Esquire, (2) George Bochetto, Esquire; (3) Eric Reed, Esquire; (4) Norman

2

Valz, Esquire; (5) William Rush, Esquire; and (6) Osmer Deming, Esquire. [See ECF No. 201 ¶ 16].

### III. Debtor and Alan Christopher Redmond Admit that Bene Market, LLC is No Longer "Operational."

In the same submission to the Berks County Court of Common Pleas, Debtor discloses, "Bene Market is not presently [an] operational company." [Ex. B at 2].

### IV. Partial Withdrawal of Cross-Motion.

Cross-Moving Creditors partially withdraw our cross-motion to dismiss but stand on our alternative request to retroactively annual the automatic stay as applied to Bene Market, LLC and National Brokers of America, Inc.

## ARGUMENT

### I. Debtor and Alan Christopher Redmond Come into Court with Unclean Hands and Make a Mockery of the Bankruptcy System.

The request by Debtor and Alan Christopher Redmond is barred by the doctrine of unclean hands. "As an equitable doctrine, application of unclean hands resets within the sound discretion of the trial court." New Valley Corp. v. Corporate Prop. Assocs. 2 & 3 (In re New Valley Corp.), 181 F.3d 517, 525 (3d Cir. 1999). "In our view, the primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, i.e., have a relationship, to the matters before the court for resolution. We will not refuse relief to a party merely because it has engaged in misconduct which is unrelated to its claims before the court." Id. "Only when some unconscionable act of one coming for relief has immediate and necessary relation to the equity that the party seeks, will the doctrine bar recovery." Id. (quotation omitted).

#### A. Debtor Opposes the Motion to Correct the Judgment in Common Pleas Unless It Personally Benefits Alan Christopher Redmond.

Debtor had no basis at law, or in fact, to oppose Jordan's Motion to Correct the Judgment

3

but opposed it nevertheless unless the judgment in Common Pleas was vacated as applied to Alan Christopher Redmond. Debtor thereby tips its hand to the Court—the instant Motion is a bad faith abuse of the bankruptcy system for the sole benefit of Alan Christopher Redmond. In our Motion to Correct the Judgment, and in our submissions to this Court, we pointed out controlling authority in Commonwealth v. Holmes, 933 A.2d 57 (Pa. 2007), where the Supreme Court of Pennsylvania stated that a trial court has "the inherent power to correct patent errors despite the absence of traditional jurisdiction. As we have in the past, we hold today that the limits enshrined in Section 5505 do not impinge on that time-honored inherent power of courts." Id. at 65 (discussing 42 Pa.C.S. § 5505). With full knowledge of this controlling authority, Attorney Valz, representing the Debtor, told Common Pleas that it could not correct the judgment because 30 days had lapsed under 42 Pa.C.S. § 5505. No attempt was made to distinguish Holmes and the other caselaw cited.

The Debtor then tells Common Pleas that it must strike the entire judgment as to Alan Christopher Redmond. No explanation is given why Section 5505 permits that but somehow prevents the correction of the judgment by striking it as to Debtor only.

The standard of unclean hands, as articulated in New Valley Corp., cited above, is met here. In addition to remaining stealthily silent when the Berks County Prothonotary entered judgment against Debtor as a ministerial error, the Debtor makes a patently bad faith opposition to any attempt to correct the error unless Alan Christopher Redmond is personally benefitted.

    **B.**    **The Bene Market, LLC Litigation.**

Debtor makes much of the fact that, in the Bene Market, LLC Litigation, Jordan seeks relief for the fact that Redmond took the assets from Debtor and created a new company, Bene Market, LLC, and then entered into a court-approved settlement with the Trustee in the instant case, having full knowledge of those facts. We have adequately briefed for the Court the issue why the automatic stay was not violated as to Redmond as well as the doctrines of waiver and laches.

However, some discussion is necessary why the Bene Market, LLC Litigation also does not violate the automatic stay, even under a theory of successor liability, and that the equitable doctrine of unclean hands applies here.

In Jordan's Verdict against Redmond, entered on December 20, **2021**, Judge Rowley of the Berks County Court of Common Pleas found that Redmond solely controlled Debtor since freezing out Jordan on August 4, 2014 [ECF No. 179-2 ¶ 28] and found the following pertinent facts:

> Redmond provided no evidence of any legitimate business purpose for value received justifying the $361,782.72 paid by Redmond from NBOA's funds to another of Redmond's companies in which he is a 96% owner, Bene Market, LLC and thus it is found that such funds are knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

[ECF No. 179-2 ¶ 59].

> Following the Freeze Out, in 2017 and 2018 Redmond misappropriated NBOA's book of residential business to his new company, Bene Market, LLC at a discounted rate and without the consent of Jordan and such transfer produced the shutting down of NBOA in 2018.

[Id. ¶ 60].

> Public advertisements of NBOA and Bene Markets, LLC as a single business entity were done by or at the direction of or with Redmond's knowledge.

[Id. ¶ 62].

> Redmond misappropriated the services of employees and assets (including NBOA's clients) of NBOA and transferred the same to an identical business, Bene Market, LLC. The latter was engaged in selling the same products, using the same office space and same furniture and equipment for Redmond's own personal benefit and to the detriment of Jordan without Jordan's consent. Based on the foregoing, Bene Market, LLC is found to be a mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan.

[Id. ¶ 70]. Additionally, Redmond personally misappropriated $11,797,865.00 through Bene Market, LLC. [Id. ¶ 77 (last sentence)].

With full knowledge of these judicial findings, the Trustee in the instant case settled all

5

avoidance claims with Redmond and Bene Market, LLC, and this Court approved that settlement. Debtor, under the control of Redmond, never objected to the same. The Trustee moved for approval of the settlement on March 24, 2022 [ECF No. 153] and this Court granted the motion and approved the same on April 19, 2022. [ECF No. 156]. With the approval of the settlement, Jordan then commenced the Bene Market, LLC Litigation on July 29, 2022, in the Berks County Court of Common Pleas, at Civil Action No. 22-11757.

Here, the argument of Debtor and of Redmond is that because Bene Market, LLC is a continuation of NBOA, the automatic stay is violated by the Bene Market, LLC Litigation. The standard of unclean hands, as articulated in New Valley Corp., is met here. Redmond, solely controlling Debtor, did the following:

(1)     Misappropriated assets from NBOA to form a new company, Bene Market, LLC.

(2)     Never offered the same assets for the benefit of creditors in the instant case.

(3)     Has now repeated the same conduct by stripping those assets from Bene Market, LLC so that it is no longer an "operational" company.

(4)     Continues to avoid paying the judgment to Jordan while trying to use this bankruptcy proceeding for his personal benefit.

The inequitable conduct here has an immediate and necessary relation to the requested relief. To the detriment of creditors, having engaged in the bad conduct of stripping assets from NBOA and then again from Bene Market, LLC, to grant any relief whatsoever serves no valid bankruptcy purpose and continues to shield the wrongdoer, Alan Christopher Redmond. Additionally, on the same grounds why the automatic stay can be retroactively annulled, as we argued at ECF No. 184 at 11-13, the Court can do the same as applied to Bene Market, LLC in Civil Action No. 22-11757 in the Berks County Court of Common Pleas.

**II. If the Court Disagrees, then in the Alternative the Record Shows that Debtor Did Not Incur Any Losses and the Certification Shows Exorbitant and Duplicative Attorneys' Fees Incurred by Alan Christopher Redmond, Personally.**

Even if the Court hypothetically disagrees with any prior argument by Cross-Moving Creditors, no relief is due. The Certification in this case shows that Debtor did not incur any loss. Attorney-fee shifting statutes are construed as limited to "compensation for **actual** costs." Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 57 (Pa. 2011) (emphasis added). The attorneys' fees were all borne by Alan Christopher Redmond, who comes into court with unclean hands as shown in Part I, supra. Because Redmond was a party in the Bene Market, LLC Litigation, he had an independent basis to incur the attorneys' fees for his own defense. The Certification additionally tacks on Redmond's attorneys' fees for intervening as party in this case, which is manifestly improper — the American Rule applies to his own fees.

Debtor and Redmond fail to establish why six attorneys were needed in that litigation, and the rates charged fail the lodestar approach. "Under the two-step "lodestar" approach, the Court must first look at "the number of hours reasonably expended multiplied by a reasonable hourly rate." Diaz v. Saucon Valley Manor, Inc. (*Diaz II*), 579 F. App'x 104, 107 (3d Cir. 2014) (discussing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). A "reasonable fee" is one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious" case. Perdue v. Kenney A., 559 U.S. 542, 552 (2010). A request for an award of reasonable attorney's fees "should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates," and should "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990) (citations and internal quotations deleted).

7

In 2014, the Third Circuit upheld a reasonable hourly rate of $400 for an attorney to have litigated an FMLA case, which originated in Hellertown (Northampton County), Pennsylvania. Diaz II, 579 F. App'x at 108, 110. In Berks County, the hourly rate of $350 is reasonable. In either event, the Philadelphia hourly rates of $695.00 Attorney Eric Reed and $825.00 for George Bochetto are exorbitant from Berks County standards and fail the lodestar approach.

Under Step 2, the Court then "has the discretion to make certain adjustments to the lodestar," Rode, 892 F.2d at 1183, but the lodestar figure "is presumptively sufficient" and that presumption "is a 'strong' one." Perdue, 559 U.S. at 552. "The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims. This adjustment should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar." Rode, 892 F.2d at 1183 (citations omitted).

Because the Certification recites attorneys' fees that were incurred for Redmond's personal defense, a downward adjustment is further necessary. Moreover, even if there was a legitimate basis to recovery these fees, then because the same were paid by Redmond, the Court can direct that the same be setoff against the judgment entered against him in the Berks County Court of Common Pleas at Docket Nos. 14-17117.

## **CONCLUSION**

WHEREFORE, based on the foregoing as we previously argued at ECF No. 184, Debtor's Motion should be dismissed or, alternatively, the Court should retroactively annul the automatic stay as to Debtor and Bene Market, LLC at Docket Nos. 14-17117 and 22-11757 in the Berks County Court of Common Pleas; and such other relief as the Court deems necessary, just, or

appropriate.

          Respectfully submitted

          **CORNERSTONE LAW FIRM, LLC**

Dated: July 11, 2024    By:   /s/ Daniel Hong
          Daniel Hong, Esquire
          I.D. # 332097
          8500 Allentown Pike, Suite 3
          Blandon, PA 19510
          (610) 926-7875

          /s/ Joel A Ready
          Joel A. Ready, Esquire
          I.D. # 321966
          8500 Allentown Pike, Suite 3
          Blandon, PA 19510
          (610) 926-7875