UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | . | Case No. 19-15488-PMM |
| | . | |
| NATIONAL BROKERS OF | . | |
| AMERICA, INC., | . | The Gateway Building |
| | . | 201 Penn Street, 4th Floor |
| | . | Reading, PA 19601 |
| Debtor. | . | |
| | . | July 2, 2024 |
| . . . . . . . . . . . .. | | 11:00 a.m. |

TRANSCRIPT OF FIRST MOTION ENFORCING AUTOMATIC STAY
AND VOIDING JUDGMENT IN VIOLATION OF AUTOMATIC STAY AND
ENJOINING JASON SCOTT JORDAN FROM PURSUING CLAIMS IN
BERKS COUNTY CIVIL DOCKET 14-17117

BEFORE HONORABLE PATRICIA M. MAYER
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            Norman M. Valz & Associates, P.C.
                           By:  NORMAN M. VALZ, ESQ.
                           441 Irvington Road
                           Drexel Hill, PA 19026

                           Demming Law Office, LLC
                           By:  OSMER S. DEMMING, ESQ.
                           38 North 6th Street
                           Reading, PA  19601

For the Intervenor         Bochetto & Lentz, P.C.
Alan Redmond:              By:  DAVID P. HEIM, ESQ.
                           1524 Locust Street
                           Philadelphia, PA 19102

Audio Operator:            Keith Borzillo


Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

```
APPEARANCES (Cont'd):

For Creditors              Cornerstone Law Firm, LLC
Cornerstone Law Firm,      BY:  DANIEL HONG, ESQ.
LLC, Jason Scott           8500 Allentown Pike, Suite 3
Jordan and Joel            Blandon, PA 19510
A. Ready:

TELEPHONIC APPEARANCES:

For Creditors              Cornerstone Law Firm, LLC
Cornerstone Law Firm,      BY:  JOEL A. READY, ESQ.
LLC, Jason Scott           8500 Allentown Pike, Suite 3
Jordan and Joel            Blandon, PA 19510
A. Ready:
```

**WWW.JJCOURT.COM**

# **I N D E X**

|                          | PAGE |      |
|--------------------------|------|------|
| **EXHIBITS**             | **ID**. | **EVD**. |
| Berks County Complaint   | --   | 42   |

4

1                COURTROOM DEPUTY:  I'll call matter Number 14,

2    National Brokers of America, Inc.  It's the first motion

3    enforcing automatic stay and voiding judgment in violation of

4    the automatic stay and enjoining Jason Scott Jordan from

5    pursuing claims in Berks County Civil Docket.

6                THE COURT:  Okay.  Why don't we get everybody's

7    appearances?

8                MR. VALZ:  Okay.  Your Honor, I'm Norm Valz.  I

9    represent National Brokers of America.

10               THE COURT:  Okay.

11               MR. HEIM:  Good morning, Your Honor.  David Heim, I

12   represent proposed intervener Alan Redmond.  They filed a

13   motion to intervene last week --

14               THE COURT:  Got it.

15               MR. HEIM:  -- currently pending but the intervention

16   is for purposes of --

17               THE COURT:  Of today?

18               MR. HEIM:  -- today.  Yes.

19               THE COURT:  Got it.  Okay.

20               MR. HONG:  Good morning, Your Honor.  My name is

21   attorney Daniel Hong.  I represent Cornerstone Law Firm,

22   attorney Joel Ready and Jason Jordan, creditors for the case.

23               THE COURT:  Got it.  Okay.  And I know the trustee

24   filed a response but didn't intend to appear, so it's I think

25   just us.  So -- all right.

1        Mr. Valz, it is your motion so I will let you

2   proceed.

3        MR. VALZ:  Okay.  Well -- okay.  Essentially, at this

4   point the creditor, Jason Jordan, has filed another lawsuit

5   against it based -- against Bene Market and Alan Redmond based

6   upon their links with National Brokers of America claiming that

7   Bene Market holds assets of National Brokers of America for

8   which National Brokers of America was not reimbursed.

9        This, you know --

10       THE COURT:  Didn't the trustee already settle with

11  both Bene Market and Redmond in this case?

12       MR. VALZ:  It did, they did and then this lawsuit was

13  filed.

14       THE COURT:  Okay.

15       MR. HEIM:  I'm not so sure that's -- I don't know if

16  it was -- it wasn't a settlement, Judge.

17       MR. VALZ:  Yeah.

18       MR. HEIM:  In January of 20 --

19       THE COURT:  There were payments being made, right?

20       MR. VALZ:  Correct.

21       MR. HEIM:  For that --

22       THE COURT:  Okay.

23       MR. HEIM:  -- but, in terms of the underlying state

24  court action, there was a stipulated order entered between the

25  trustee and Mr. Jordan's counsel remanding certain claims back

1  to the state court --

2         THE COURT:  Right.

3         MR. HEIM:  -- but not against the debtor.

4         THE COURT:  Right.

5         MR. HEIM:  So I wasn't sure if there was -- if that's

6  what Your Honor is referring to, or if it was a --

7         THE COURT:  No, that's what I'm referring to.

8         MR. HEIM:  Yeah.

9         THE COURT:  Yes, so my understanding, and I don't --

10  I will let you finish in a moment, I don't mean to cut you off.

11         My understanding is that, at this point in time, as

12  far as this case is concerned, any fraudulent transfer claims,

13  et cetera, are not being dealt with here amongst the Redmond

14  and Bene Market's parties.  And National Brokers, at this

15  point, given that the trustee is obviously stepping into their

16  shoes, I don't know that at this point this motion -- I don't

17  know how those other parties affect this Chapter 7 case to the

18  tune of you asking for it to be dismissed.

19         So if you can explain to me why that would be relief

20  that you would be seeking?

21         MR. VALZ:  Pardon me, you mean, dismissing the

22  bankruptcy?

23         THE COURT:  Yes, that's what I understood you're --

24  part of your relief to be.

25         MR. VALZ:  Oh, no.  No, it isn't.

1              THE COURT:  Okay.

2              MR. VALZ:  It's dismissing the judgment in Berks

3    County, the civil judgment.

4              THE COURT:  Right, and isn't that, correct me if I'm

5    wrong, isn't that already -- isn't there already a motion to

6    amend that order --

7              MR. HEIM:  That's correct, Your Honor.

8              THE COURT:  -- in state court?

9              MR. VALZ:  Yeah, that was just filed a month after my

10   motion, but --

11             THE COURT:  Okay.

12             MR. VALZ:  -- I don't believe that that motion will

13   succeed, Your Honor.

14             THE COURT:  Why is that?

15             MR. VALZ:  I believe the period of time to amend a

16   judgment is limited by law to, if not mistaken, only 30 days.

17             THE COURT:  Okay.  So you take the position that it

18   wasn't simply a ministerial mistake?

19             MR. VALZ:  No, it wasn't.

20             THE COURT:  You think it was an intentional

21   collection action?

22             MR. VALZ:  Well, I think it was a mistake, obviously,

23   but its ramifications, you know, that the opposition creditor,

24   Jason Jordan's leapt upon this error and is attempting to usurp

25   basically the status of the trustee in determining what assets

1  are NBOA's and trying to retrieve those assets --

2          MR. HEIM:  Your Honor, if I can just --

3          MR. VALZ:  -- and I think the --

4          MR. HEIM:  The judgment was entered against NBOA

5  clearly in error, should not have happened.

6          THE COURT:  Correct.

7          MR. HEIM:  Should not have happened.  I think what

8  would then happens thereafter is nothing for Mr. Jordan's

9  counsel to correct it.  The stay was lifted earlier this year

10 in January --

11         THE COURT:  Right.

12         MR. HEIM:  -- that's for the judgment.  Before that

13 stay was lifted Mr. Jordan and his counsel filed a separate

14 lawsuit against another entity called Bene Markets under the

15 theory -- and that's in Berks County in state court -- under

16 the theory that Bene Markets is really just a successor of NBOA

17 and the recipient of NBOA's assets.  And they've asked the

18 state court in Berks County, this is a pending action, to enter

19 a judgment against Bene Markets because it has assets of NBOA.

20         I only recently, within the last four or five months,

21 kind of got into some of these matters and, once the judgment

22 was unstayed or execution proceedings were ongoing, I then

23 began to look into how could they have, (a), a judgment against

24 NBOA, and (b), in a separate lawsuit claim that NBOA's assets

25 are actually this other entity and a judgment should be entered

1   against that other entity because they have a judgment against

2   NBOA because I knew that NBOA was in a Chapter 7 bankruptcy

3   which was still active.

4         Ultimately, I looked at all of these kind of things

5   kind of happening, there has to be -- there's something awry

6   here if one creditor of NBOA is chasing NBOA's assets into

7   another entity while a bankruptcy proceeding is ongoing and a

8   stay, an automatic stay, is still existent, which I think

9   that's the basis of why we're here today.

10         We think Mr. Jordan's activities in, (a), accepting a

11   judgment against NBOA, which is a violation of the automatic

12   stay, (b), filing a separate lawsuit against NBOA's alleged

13   successor in interest because it's the recipient of NBOA's

14   assets to get those assets, we think all those issues belong

15   here in bankruptcy court because it's, frankly, unfair to any

16   other creditors of the bankruptcy entity that this creditor is

17   going around the automatic stay through state court

18   proceedings, having a judgment against the debtor and seeking

19   assets of the debtor through a pending act of state court

20   lawsuit.

21         And that's why -- I think that's the genesis of the

22   motion, we think that needs to stop.  And frankly, I think the

23   whole thing probably belongs in bankruptcy here.

24         THE COURT:  But there was already an agreement for it

25   to go to state court, correct, with regard to --

1          MR. HEIM:  Not --

2          THE COURT:  -- Redmond and Bene Markets only?

3          MR. HEIM:  Only and not --

4          THE COURT:  Correct.

5          MR. HEIM:  -- related to assets of the debtor or

6    claims against the debtor, so the judgment against the debtor

7    is clearly in violation of that.

8          THE COURT:  I understand that and that can be

9    annulled.  I don't think that that's a big deal.

10          MR. HEIM:  And I think the Third Circuit case law

11   that's cited in this petition that Mr. Valz filed provides that

12   if you're going to chase another third party entity on the

13   theory that it's a successor of the debtor, those claims belong

14   in bankruptcy and they're subject to the automatic stay.

15          The pending -- and this was filed in 2022, the Berks

16   County Court of Common Pleas case that I'm referring to, and I

17   have a copy of the complaint here, Judge, if Your Honor would

18   receive it.  That's a major problem.  It's a major problem

19   because it's a clear violation of the automatic stay and Mr.

20   Jordan is alleging that Bene Market should have a judgment

21   against it because it's really NBOA and it has NBOA's assets.

22          And you know, I'm not here, Judge, to litigate that

23   issue, but if that, in fact, is the case, if Mr. Jordan's

24   allegations are to be believed, I think that that lawsuit is

25   improper and it needs to either be transferred back into here

1  or, frankly, I think everything, given the fact that NBOA has a

2  judgment against it, jointly and severally, against my client,

3  which is in violation of the automatic stay, I really think

4  everything needs to be pushed into bankruptcy.  So at least the

5  trustee has an opportunity to look at all of this and see if,

6  you know, Mr. Jordan's claims need to be administered alongside

7  other assets of the estate in an orderly fashion, which I

8  think, and I'm not a bankruptcy lawyer by nature, I know enough

9  to be dangerous, but I think that's kind of the purpose of

10 bankruptcy, so this thing happens in an orderly fashion.

11         And I think what's happening in the state court right

12 now is not orderly.  It's completely disorderly with multiple

13 actions, judgments against a bankrupt debtor, and a separate

14 lawsuit trying to chase those assets of the bankrupt debtor so

15 that one creditor can get more money outside of the bankruptcy.

16         I don't think that's proper, Judge, and that's the

17 essence of I think the motion.

18         THE COURT:  Okay.

19         MR. HONG:  Your Honor, may I respond?

20         THE COURT:  Yes.

21         MR. HONG:  Your Honor, I just would like to say that

22 we completely disagree with what opposing counsel just said.

23         So basically with Point A to opposing counsel about

24 the judgment, we -- like you said it was a ministerial error.

25 We never directed Judge Rowley, who was the judge at the time,

1  to make a judgment towards NBOA.  The opposing counsel

2  representing Alan Redmond and Bene Market said that the

3  opposing counsel is only here in the capacity to represent

4  those two people, the individual and the entity Bene Market.

5          And the other thing is they are making a point that

6  we didn't correct the record but I didn't see opposing counsel

7  make any corrections to the record either.  They only bring

8  this up two years later.  In an appeal to superior court Alan

9  Redmond himself appealed, NBOA did not.  So I think that's

10  something that should be taken note of.

11          THE COURT:  You think that the trustee should have

12  appealed something that was a violation of the stay to begin

13  with?

14          MR. HONG:  I'm sorry, Your Honor?

15          THE COURT:  You think that the proper remedy for NBOA

16  was that the trustee should have appealed an improper entry of

17  an order against it in violation of the stay?

18          MR. HONG:  Oh, I'm sorry, Your Honor.  My point was

19  that, just by Alan Redmond appealing, the opposing side was

20  indicating that they understood the judgment to be just against

21  Alan Redmond.  And once we found out that the error was made,

22  like you said, we have amended our judgment with Judge Sprecher

23  who took over for Judge Rowley.

24          THE COURT:  Right.

25          MR. HONG:  And what opposing counsel said is slightly

13

1 untrue, we cannot -- we had no communication with Judge

2 Sprecher.  We did not direct the verdict -- ask Judge Rowley to

3 direct the verdict to NBOA.

4        So just to take care of point number -- Point A, it

5 was a ministerial error and, to the best of our abilities,

6 we're asking the Berks County Court of Common Pleas to correct

7 that ministerial error.

8        Now to get onto, if Your Honor would allow me, to

9 respond to the points about the successor entity and this case

10 belonging in bankruptcy court.  It was been understood that

11 Section 362(a) of the automatic stay, generally speaking, the

12 general rule is that it applies to the debtor who files for

13 bankruptcy, in this case which is NBOA.

14        But it is also true, I do give the opposing side the

15 argument that in unusual circumstances the automatic stay has

16 been extended to individuals and other successor entities as

17 the opposing counsel just said, but in those cases the burden

18 to meet that unusual circumstance was very high.

19        Part of that was that, (1), we're in the Chapter 7

20 case, and those cases were Chapter 11.  The reason why the

21 automatic stay was extended to the individual was because the

22 individual -- if the creditors went after the individual it

23 would interfere with the reorganization process.  We're not in

24 reorganization right now.

25        The other thing is that the purpose of the automatic

1  stay extending, because outside of a Chapter 13 with co-debtor

2  stay, I don't know other scenarios where the automatic stay

3  generally extends to other creditors, it basically is to help

4  with the reorganization.

5          In this case the other thing I want to correct that

6  opposing counsel just said is that our lawsuits, at the state

7  level, were always against NBOA and Bene Market.  And the only

8  reason why we tried to pierce the veil with Bene Market was not

9  to go after NBOA, it was it go after Alan Redmond individually

10 because we believe that Bene Market is a shield that he was

11 using for his individual assets.

12         And finally, to answer the claim that this belongs in

13 bankruptcy court, now to go with the argument, for argument's

14 sake, if we're saying that Alan Redmond, and Bene Market, and

15 NBOA are all intertwined and they're one and the same, and they

16 -- therefore Bene Market and Alan Redmond should also receive

17 the benefits of the automatic stay, I think it's also fair that

18 all of their assets, Bene Market's assets, Alan Redmond's

19 assets, become property of the estate.  And the opposing

20 counsel was just mentioning fairness to all the creditors, all

21 the creditors of Mr. Redmond individually should be a part of

22 the NBOA case as well.

23         So if they want to make the argument that NBOA, Bene

24 Market, Alan Redmond are all intertwined in one and they want

25 to put them in bankruptcy, we think Mr. Redmond should file

1  schedules just like any other individual Chapter 7 would, and

2  list all of his assets, all of his creditors, and Bene Market

3  as well so the trustee can organize that and, for the fairness

4  of all creditors, distribute all those assets to all the

5  creditors.

6          So if we were to go that route, I think that's only

7  fair to all sides, to have all assets listed, all creditors

8  listed and make it one and the same, like opposing counsel is

9  stating.

10          THE COURT:  So I just want to clarify something.  So

11  your opposing counsel has argued that you are sort of

12  inadvertently going after assets of the estate because you're

13  going after Bene Markets as a successor entity, but I think

14  what I just heard from you is that you were not doing that.

15  What you were trying to do is use a theory of piercing the

16  corporate veil to get to Mr. Redmond through Bene Markets,

17  right?

18          MR. HONG:  That's correct, Your Honor.

19          THE COURT:  Okay.  So is it your position that,

20  ultimately, Bene Markets doesn't have any assets and it's

21  really Mr. Redmond's assets that are in play?

22          MR. HONG:  That is correct, Your Honor.

23          THE COURT:  Okay.  Do you have a response?

24          MR. HEIM:  Judge, and I'm reading from Mr. Jordan's

25  state court litigation against Bene Market where he's

1  attempting to place a judgment on Bene Markets.  In Paragraph

2  29 he says, on information and belief Redmond caused NBOA to

3  transfer its assets, including its contracts with insurance

4  carriers, to Bene Market for no valuable consideration.

5      In Paragraph 33 they cite the initial Berks Court

6  findings of fact and they say the court also found that Bene

7  Market was, quote, an identical business to NBOA, and quote, a

8  near continuation of NBOA for the purposes of ownership

9  interest and rights as between Redmond and Jordan.

10      In Paragraph 55, Judge, which I think is really more

11  direct and really speaks to exactly what the gist of the

12  lawsuit is about, it says as it pertains to both NBOA and Bene

13  Market there exists here such a unity of interest and ownership

14  that the separate personalities of the corporations and the

15  individual no longer exist.  And in the wherefore clauses of

16  the two counts in this Berks County action filed in 2022 they

17  are asking for a judgment against Bene Markets as a successor

18  to NBOA.

19      These are not my allegations, Judge.

20      THE COURT:  Those are the words that are -- because,

21  as I understand the paragraph that you just read, it sounds to

22  me like they're not going after Bene Market as a successor,

23  that they're going after Mr. Redmond and Bene Markets, so if

24  that's the case then that's a different animal.

25      MR. HEIM:  I think that the -- I mean, it's my

17

1 interpretation.  I guess my conclusion having read those

2 paragraphs of the complaint, Judge, that they are using --

3 they're trying to go after Bene Markets as the successor to

4 NBOA because they say they -- it operates the same business, it

5 has virtually identical ownership, which I think is a little --

6 they say that in their lawsuit but I'm not sure if I totally

7 agree with it, and it's operating the same business.  And

8 they're asking for in their unjust enrichment count they're

9 asking for a judgment against Bene Markets because of that.

10        It's not complete -- it's not a paragon of clarity,

11 Judge, I agree, the lawsuit, but I think that's what they're

12 doing.

13        And you know, Judge, if you were to grant some form

14 of a relief here, you know, at a minimum, I think execution

15 proceedings need to get stayed and the trustee should look at

16 this to determine if this is something that belongs in

17 bankruptcy.

18        THE COURT:  Mr. Hong?

19        MR. HONG:  Yes, Your Honor, so I just want to make

20 that I don't know what year the complaint that opposing counsel

21 is reading from but this case has been going on at the state

22 court and bankruptcy courts for a really long time now, and I

23 know that -- I think the earliest stated state court case we

24 have is 2014 and it's possible that the complaint that he just

25 read from is prior to NBOA filing for bankruptcy.

1          But the decision --

2          MR. HEIM:  It's not, Judge.  I can clarify that right

3    away.

4          MR. HONG:  -- that Judge Rowley wrote, which is in

5    Exhibit A, in Number 55 it says following the freeze out

6    Redmond took $116,738.60 from NBOA, and in the verdict slip

7    signed by Judge Rowley is says the court finds in favor of

8    defendant Jason Scott Jordan and against plaintiff Alan

9    Christopher Redmond, and no mention of NBOA on the verdict

10   slip, Your Honor.

11         THE COURT:  And that's the judgment that the

12   execution is happening on, right?

13         MR. HONG:  Yes, Your Honor, and that's why we believe

14   it's a ministerial error because, once Judge Rowley retired,

15   Judge Sprecher came in and I believe he entered judgment as a

16   ministerial error for NBOA along with Bene Market and Jason

17   Jordan.

18         MR. HEIM:  And in terms of, Judge, correcting that

19   ministerial error, which we don't think it was but -- because

20   NBOA was wound up in the evidence of this case throughout, you

21   know, there's a Pennsylvania statute, I think it's 42 Pa.C.S.

22   5505, which expressly says if you're going to -- if you need to

23   modify a final judgment you need to move within 30 days, which

24   obviously did not happen within 30 days and that's a final

25   judgment.  I don't think the state court is going to have

1  jurisdiction to do anything with that final judgment.  It is

2  jointly and severally entered against Mr. Redmond and NBOA,

3  that is an undisputed absolute fact.

4        THE COURT:  And so why -- if I simply enter an order

5  annulling the stay retroactively, why doesn't that solve the

6  problem of the violation?

7        MR. HEIM:  Well, I think, for one, there's still a

8  stay as to NBOA, so if you were going to lift the stay as to

9  NBOA and this bankruptcy proceeding is going to be active, I

10  just don't think that's consistent with --

11        THE COURT:  Oh, I'm not saying that that's the only

12  relief, I'm just saying with regard to the violation, the

13  purported violation of the stay, I think that that's resolved

14  by annulling it with regard to that particular action.  I'm not

15  saying that the stay goes away and that I'm giving relief from

16  the stay, I'm not.

17        But I think that, at least with regard to the

18  violation, I just -- I'm not convinced that it was anything

19  other a new judge coming in and perhaps making a mistake with

20  regard to the judgment.  So I'm not buying the argument that

21  that was a willful and intentional violation of the stay, I

22  just -- I don't think that that was.

23        Now, having said that, how do we go forward from

24  here?  Remind me again, so the trustee has -- there is a

25  consent order that remanded it back to Berks, and then there's

1  also an agreement that payments are being made that released

2  both Redmond and Bene Markets, correct?

3          MR. HEIM:  Mr. Valz would probably know more about

4  that.

5          THE COURT:  Okay.

6          MR. VALZ:  Yeah, that is correct.

7          THE COURT:  And that was with regard to I presume

8  fraudulent transfer actions that the trustee could possibly

9  have against them for --

10          MR. VALZ:  Correct.

11          MR. HEIM:  That's correct, Your Honor.

12          THE COURT:  -- essentially the same thing?  Okay.  So

13  at this point, when it comes to the execution against Redmond

14  and Bene Markets, you don't think that that agreement has some,

15  I don't know, relevance --

16          MR. HEIM:  Well, I think that what Mr. Jordan --

17          THE COURT:  -- in terms of what the trustee -- how he

18  sees it?

19          MR. HEIM:  Right.  What Mr. Jordan is doing is he is

20  essentially trying to follow NBOA's assets wherever it goes to

21  pay himself.

22          THE COURT:  But is he?

23          MR. HEIM:  I think he is, Judge, because --

24          THE COURT:  Because if the trustee is -- has dealt

25  with the quote/unquote assets that were transferred as part of

1  this agreement --

2          MR. HEIM:  Right, which is --

3          THE COURT:  -- they've decided that this is what it's

4  worth, you're to pay that into the estate, we're good.  I think

5  the trustee is taking the position that whatever theory you got

6  going on in terms of the state court, in terms of getting of

7  getting money from Mr. Redmond, that it doesn't involve assets

8  of the estate because that's already been dealt with.

9          MR. HEIM:  I don't know how he can take that position

10 if you read this lawsuit, Judge, which was filed in July 28,

11 2022, Docket Number 22-11757.  This lawsuit is Jason Jordan

12 saying these things were transferred into Bene Market, they're

13 NBOA's assets, given to me.

14         THE COURT:  But the trustee has already said I've

15 taken care of everything in terms of the estate, in terms of

16 fraudulent transfers so I don't believe there's anything else.

17 Okay.  So as far as the Chapter 7 is concerned and jurisdiction

18 here is concerned, isn't that a closed matter?  And whatever

19 Mr. Jordan now does to try and get to Mr. Redmond's assets, I

20 don't think that that affects the estate.

21         MR. HEIM:  Well, I have to concede I'm not up to

22 speed on that consent order and what the terms of it are.

23         THE COURT:  Okay.

24         MR. HEIM:  And I'm not so sure that the trustee

25 really knows about this lawsuit?

1          THE COURT:  Am I mischaracterizing it, Mr. Valz?

2          MR. VALZ:  I think you're accurate.

3          THE COURT:  Okay.

4          MR. VALZ:  But the one -- the problem with the new

5     lawsuit is it's basically attempting to snatch NBOA assets and

6     not have them as part of the bankruptcy.

7          THE COURT:  But do you think that there are NBOA

8     assets that are not already dealt with in that consent order?

9          MR. VALZ:  Well, evidently they do or they wouldn't

10    have filed the lawsuit subsequent to the consent order.

11         THE COURT:  Well, that's what I'm -- that's why I'm

12    perplexed, right?  Because I have a response from the trustee

13    who's, like, I'm not going involved in this, we're good.  We

14    have a consent order, they're making payments, et cetera.  I

15    don't know why there would then be an argument that there are

16    other assets of the estate out there because anything that

17    would be NBOA's are assets of the estate, so --

18         MR. HEIM:  I guess, if he --

19         THE COURT:  -- I just don't know what the world of

20    those estate -- of those assets look like if I have a consent

21    order that says that we've dealt with all of it.

22         MR. HEIM:  I think, at least from my client's point,

23    if Mr. Jordan is successful in, let's say his 2022 lawsuit,

24    Bene Market had assets of the estate, of NBOA's estate, et

25    cetera, those assets don't necessarily belong to Mr. Jordan if

23

1  they're really assets of the estate.

2          Now, the trustee --

3          THE COURT:  What assets are there that we're talking

4  about?

5          MR. HONG:  So Your Honor, I'm a little perplexed

6  myself as to what opposing counsel is talking about because in

7  that 2022 suit -- now, I represent Cornerstone Law Firm, I work

8  at Cornerstone Law Firm.  I do most of the bankruptcy stuff

9  there, that's why I was trying to see if Mr. Ready could be

10  here with me today.  But from my understanding, any reference

11  to NBOA is saying that because, you know, money or whatever was

12  in NBOA and here's what happened.  They transferred it to Bene

13  and then, from Bene, Mr. Redmond took it out.  So --

14          THE COURT:  But isn't that the same transfers that

15  we're talking about that are in this consent?  That's why I'm

16  confused.

17          MR. HONG:  That's what I understand as well, Your

18  Honor.

19          And the other thing is, Your Honor, if opposing

20  counsel really wants to put Mr. Redmond in bankruptcy, I have

21  no problem with Redmond, just like any other Chapter 7 client

22  of mine, filing for a Chapter 7.  So if he sees that as --

23          THE COURT:  Well, I mean, I understand that, and I'm

24  not going to give the benefits of the automatic stay to third

25  parties.  I think the Supreme Court is pretty clear about how

24

 1  they want to do things, and I think the Third Circuit is pretty

 2  clear about how they want to do things in that situation, and I

 3  don't think that there's any reason to extend the stay to

 4  anyone other than the debtor.

 5          However, I am concerned that Mr. Ready is not here to

 6  explain to me what's going on with the lawsuit, because it

 7  would seem to me that it is at least somewhat ambiguous as to

 8  his litigation strategy, because there is at least the option

 9  to pierce the corporate veil without alleging that there is

10  successor liability from the debtor to the new entity I would

11  think.  And I don't know why the additional counts are there in

12  or that relief is being asked for that seems, at least on its

13  face, to talk about assets that I don't think exist given what

14  the trustee has already done, so I'm a little concerned about

15  that.

16          So this lawsuit that was just filed in 2022, that's

17  what we're talking about, right, 2022?

18          MR. HEIM:  Correct, Your Honor.

19          THE COURT:  Where is that in terms of status in state

20  court?  Is it in pretrial stages, like, it's in discovery

21  stage?

22          MR. HEIM:  It's pretrial, there's actually a status

23  conference next week, the 12th.

24          THE COURT:  Okay.  So an answer has been filed and

25  now they're --

25

1          MR. HEIM:  Correct.

2          THE COURT:  Okay.  So Mr. Valz, you're asking me to

3  do what with regard to that case, to stay that case?

4          MR. VALZ:  I would say an order to dismiss it.

5          THE COURT:  To dismiss the state court case?

6          MR. VALZ:  Well, if --

7          THE COURT:   I don't think I can do that.

8          MR. VALZ:  -- you could, or -- okay.

9          THE COURT:  I'm pretty sure that they wouldn't like

10  me to do that.

11          MR. VALZ:  They wouldn't like it, yeah.  What --

12          THE COURT:  I'm pretty sure they're going to tell me

13  to stay in my lane, but the only other -- I guess my issue is I

14  feel like the order that was already entered with regard to the

15  stay was somewhat disregarded in terms of this lawsuit, and

16  entering another order that looks like that, I'm not sure if

17  it's going to be effective or not.

18          All right.  The status is next week, is that what you

19  said?

20          MR. HEIM:  Yes, it is.

21          THE COURT:  Mr. Hong, do you -- you're probably not

22  involved in that I guess, right, because Mr. Ready is involved?

23          MR. HONG:  Your Honor, I do have do access to what's

24  going on in the case.

25          THE COURT:  Okay.

26

1          MR. HONG:  But I'm not the one actively litigating

2  it.

3          THE COURT:  Right, but that's your understanding too,

4  that there's a status next week and --

5          MR. HONG:  Yes, Your Honor.

6          THE COURT:  -- that's where it is?

7          MR. HONG:  And if it helps I can have Mr. Ready

8  clarify, or I don't know if there's anything to amend to just

9  say that we understand NBOA is in bankruptcy and the automatic

10 stay applies.  We're happy to do that.

11         THE COURT:  Well, I think, at a minimum, something

12 needs to happen with the pleading.  I am hesitant to tell a

13 state court litigant that they have to do something with their

14 pleading, but I do feel that, right now, the way that it exists

15 is at least facially violative of the order.

16         So I think what I'll need to do is to be creative

17 about my order, which I will be, to -- I will not find that the

18 entry against the debtor was a violation that is anything other

19 than ministerial.

20         However, with regard to the new case, I will need to

21 enter an order that stays that action with regard to the debtor

22 and any allegations, any claims against the debtor or the

23 debtor's assets, whether that's being couched as successor

24 liability or whatever it's being couched as, that cannot go

25 forward.

1    So the 2022 case is going to need to be limited in

2 some way as a result of that order and that's I think where

3 we're falling today, if that makes sense?

4    MR. HONG:  Yes, your Honor.  And just to make sure,

5 NBOA has the benefit of the automatic stay but Alan Redmond and

6 Bene Market is fair game, Your Honor?

7    THE COURT:  They are fair game to the extent that you

8 are not alleging that Bene Markets has assets of the debtor

9 that you're going after.  So if you are alleging that assets

10 from the debtor have been transferred to Bene Market and you're

11 going after that, that's a problem, and that's violative of the

12 stay.  So --

13    MR. HONG:  Understood, Your Honor.

14    THE COURT:  -- however that gets amended, I presume,

15 or something happens at the status to make that clear.  I don't

16 want it going to trial on that theory that there are debtor's

17 assets at play, because they're not.  So perhaps you can have a

18 discussion with him but that's the order that I need to enter

19 because I feel like, at a minimum, I can't have yet another

20 order that talks about the debtor's assets.

21    MR. HONG:  Understood, Your Honor.

22    THE COURT:  Does that make sense?

23    MR. HONG:  Yes, it does.

24    THE COURT:  Does that makes sense?

25    MR. HEIM:  I understand what you're saying, Judge.  I

1  think that completely changes the entire lawsuit.  It's --

2            THE COURT:  And it may.

3            MR. HEIM:  Yeah.

4            THE COURT:  And then that's not sort of what --

5            MR. HEIM:  I understand.  It's --

6            THE COURT:  That's the best that I can do.

7            MR. HEIM:  It's essentially a new lawsuit, and maybe

8  they should re-file.  I don't want to suggest what they should

9  do but this thing is absolutely chasing the debtor's assets.

10           The only thing I would say to add to that, Judge, is

11 that, you know, in addition -- I understand the debtor is --

12 you know, we've had -- this 2022 action was defended for a

13 period of time in Berks County, and I think it was improperly

14 filed.  It was clearly a violation of the stay, I don't know

15 why it was filed.  I mean, the same law firm that filed it is

16 the one that signed off on the consent order saying they can't

17 proceed against debtor assets, and yet they put in their

18 complaint that that's what they're doing.  Don't know why that

19 was done, but it was, and there were fees that were incurred as

20 a result of defending that, plus there were fees incurred to

21 come here to alert Your Honor.

22           You know, from -- I guess from the debtor's side of

23 it, you know, nobody was looking at this with real scrutiny

24 because there was a stay entered by the trial court and, while

25 the appeal was going on in the state court, superior court just

wasn't, you know, really at the head of the line. But once that got lifted and there were execution proceedings, that's when the debtor started going, why is this happening? And why are they chasing our assets?

So I say that long-winded-wise admittedly, I think there should be some additional monetary relief by way of attorneys fees, at a minimum, Judge. It was a clear violation in my mind. I think it was a clear violation of the stay, a stay order that Your Honor didn't enter but counsel for Mr. Jordan negotiated and signed and they violated that. And they've been violating for two years and, you know, they haven't, up until now, done anything with that state court action as if we can do this. We can do this even though the order that we signed, and I don't think it was Your Honor, I think it was your predecessor --

THE COURT: It was the prior judge, right.

MR. HEIM: -- entered as a bankruptcy court. It's, you know, it's not just a, oh, it was ministerial. This 2022 action was not ministerial. There was a lot of deliberateness to it.

THE COURT: I'm not saying that the 2022 action -- I think there are problems with the 2022 action. I do think that the original entry against NBOA is a problem, that is probably just a mistake. I don't think that is compensable. Whether or not this -- and this complaint is attached to something or --

30

1           MR. HEIM:  Your Honor, I don't know what --

2           THE COURT:  -- I don't have that?

3           MR. HEIM:  It was not attached to the initial moving

4 papers.

5           THE COURT:  Okay.

6           MR. HEIM:  I do have an extra copy, can I --

7           THE COURT:  Have you seen it, Mr. Hong?  Have you see

8 the --

9           MR. VALZ:  I filed it last night.

10          THE COURT:  Oh, you did?

11          MR. VALZ:  Yeah, with the limited response to the

12 cross motion.

13          MR. VALZ:  It's Exhibit A.

14          THE COURT:  Okay.  So it is here somewhere, and have

15 you seen it?

16          MR. HONG:  Not yet, Your Honor.

17          THE COURT:  You have not, okay.

18          MR. HONG:  I know Mr. Ready would be able to respond

19 to it though.

20          THE COURT:  But he's not here.  I don't know why he's

21 not here but he's not here.

22          Do you want to take a minute and just look at it?

23 Because I think that I need to at least review it and I don't

24 want to do it without you reviewing it first.

25          MR. HONG:  I could do that, Your Honor.

1          THE COURT:  So do you want to take a minute?  We can

2  --

3          MR. HONG:  I was wondering he does have court, but

4  would I be able to call him in?

5          THE COURT:  Yes.  Why don't we -- we'll take, like, a

6  five-minute recess.  You can review that, you can go see if you

7  can talk to him and find out what his availability is, and then

8  maybe we can, at least with regard to that, answer some

9  questions.

10         MR. HONG:  Yes, Your Honor.

11         THE COURT:  Okay.

12         MR. HONG:  Thank you very much, Your Honor.

13         THE COURT:  All right.

14                   (Off the record)

15         COURTROOM DEPUTY:  Joel Ready or Ready (pronouncing),

16  sorry, if you could unmute yourself and show your video.  Well,

17  no video.

18         MR. READY:  I'm sorry, I'm not -- there we are.

19         THE COURT:  There we go.

20         COURTROOM DEPUTY:  There we go.  Okay.

21         MR. READY:  My apologies.

22         THE COURT:  Okay.  So we're back on, Keith?

23         UNIDENTIFIED SPEAKER:  Yeah.  Oh, yeah.  We're good.

24         THE COURT:  Okay.  All right.  So, Mr. Ready, you're

25  representing -- well, why don't you enter your appearance?

1  It'll be easier if you tell me who you're representing.

2        MR. READY:  Sure.  My name is Joel Ready.  I'm

3  representing myself, Cornerstone Law Firm.  I believe that's

4  the only two on this.

5        MR. HONG:  And Jason Jordan.

6        MR. READY:  Oh, and Jason Jordan, I'm sorry.

7        Correct, yes.

8        THE COURT:  Okay.  So we're back on the record on

9  this because there is an issue that was raised with regard to

10  some of the allegations that are made in the 2022 lawsuit and

11  it appears to me that, at least facially, some of those may

12  implicate, wrongfully or not wrongfully, assets of the estate,

13  which seems strange given the stay order.

14        So I wanted your co-counsel essentially to have a

15  chance to read it and he indicated that you've been sort of

16  lead counsel on that and perhaps you could shed light on those

17  provisions.

18        MR. READY:  Certainly, Your Honor.  So for fullness

19  of the record here, I guess your understanding, this was

20  previously undertaken by my partner, law partner, who handled

21  this matter from 2014 until his untimely death on June 29th of

22  2022.  This complaint was drafted but I, you know, before he

23  passed I reviewed it and re-filed it in July of 2022, new

24  complaints and the wherefore clauses challenge Alan Redmond

25  physically as to his -- basically his piercing the corporate

1  veil of an entity that we believe that Jason Jordan had an

2  ownership interest or ownership rights and that, well, now it's

3  a previous lawsuit that had been filed.  That suit does not

4  name NBOA as a any sort of defendant, nor does it ask for the

5  court to take any action in regards to NBOA.

6          THE COURT:  Does it purport to go after Bene Market

7  as a successor to NBOA and possess assets of the debtor?

8          MR. READY:  It did not ask for any possession of any

9  NBOA assets.  It asked for to basically bring action against

10 Alan Redmond for his subsequent breaches of fiduciary duty

11 against Jason Jordan as a co-owner of Bene Markets.

12          THE COURT:  Okay.

13          MR. READY:  I will note for the Court at no time

14 either -- again, we've had by my review of the file in the

15 last, you know, 20 minutes here, there were multiple hearings,

16 and I can tell the Court it was September 27th there was

17 argument on preliminary objection as of '22, September of 2022.

18 There was also a stipulation dismissing another party January

19 of 2023.  There were at least two hearings, and I think one of

20 those is broken into two separate dates.  The first hearing was

21 on March 8th, 2023, another one on November 9th of 2023, on our

22 petition for a receiver of NBOA while that litigation was to

23 proceed.

24          At no time did anyone raise that they believed that

25 this implicated any bankruptcy that had been filed.  Throughout

1   that Mr. Redmond and Bene Market were represented by Norman

2   Valz as well as Eric Reed of Philadelphia.  At no one point did

3   any of them raise with me or with the court that they believed

4   that any of this implicated a bankruptcy estate.

5         THE COURT:  Okay.  Counsel?

6         MR. HEIM:  Your Honor, first --

7         THE COURT:  You might want to actually -- everyone

8   might want to sit --

9         MR. HEIM:  Can we sit down?

10         THE COURT:  -- so that he can see you.

11         MR. HEIM:  Yeah, so he's not looking at my stomach.

12         THE COURT:  Now that I'm thinking about it so he's

13   not looking at your jacket.

14         MR. HEIM:  Your Honor, first, and I'm not going to

15   re-characterize the complaint.  I think Your Honor should

16   review it.  You know, it's been filed in the record now.

17   There's no reason for Bene Markets to be in this case if not

18   for NBOA allegedly transferring assets to it and it being a

19   successor as alleged in the complaint.

20         It's just -- if look at the complaint, Judge, that is

21   the -- really only takeaway you can have and they are asking

22   for a judgment against Bene Markets based on those things.

23   There's no other basis for Bene Markets to be in this lawsuit.

24   Frankly, there's no other basis for the lawsuit to exist other

25   than those two basis and it's set forth in the complaint.

1          Mr. Ready is the only counsel listed on the complaint

2    that was filed on July 28th.  His law firm was counsel of

3    record in this case, or the adversary proceeding I think it

4    was, where this consent order was entered.  It might actually

5    it might have been entered in both the adversary and this case

6    but Mr. Redmond was not a party of that and, frankly, the

7    debtor wasn't a party of it, the trustee was, or at least Mr.

8    Valz wasn't.

9          MR. VALZ:  Yeah, I wasn't.

10          MR. HEIM:  The last thing I would say, Judge, maybe

11   the second to the last thing is, yes, there apparently was --

12   were proceedings in the state court where Mr. Valz represented

13   Bene Market and, frankly, I don't think he was aware that this

14   order existed as to how the case migrated, or at least the

15   original case, migrated from bankruptcy court to the state

16   court and what the status of the stay was.

17          The reason why it came to light, frankly, was that

18   Mr. Ready started to execute upon the judgment earlier this

19   year, February and March, and at that time I was involved and I

20   started to review it and I couldn't understand how it migrated

21   from bankruptcy court.  So I did some digging and saw the order

22   and --

23          THE COURT:  And the execution was against what?

24          MR. HEIM:  Well, I would say -- when I say execution

25   I'm broadly saying execution, it was discovery in aid of

1    execution.

2            THE COURT:  Got it.

3            MR. HEIM:  There has been a motion filed by Mr.

4    Ready, I think two or three motions for what's called a

5    charging order against certain LLCs, which includes Bene Market

6    here.  And my understanding loosely of a charging order in that

7    context would be that whatever interest the judgment debtor has

8    in that entity would ultimately get transferred to the judgment

9    creditor I believe.  So those types of things are going on and

10   there's motions pending about discovery issues in aid of

11   execution in the Berks County matter, all of that is going on.

12           Within that milieu, I, frankly, just wanted to know

13   what happened with this bankruptcy and how did this case and a

14   judgment get entered against NBOA.  And I had started to

15   investigate a month or two ago and that's when I was, like, oh,

16   wow, why did this happen, how did it happen?  And I also knew

17   of the existence, and I'm not counsel of record in the state

18   court action against Bene Market, but I knew of it, and I read

19   the complaint and, frankly, it's just absolutely clear that Mr.

20   Ready is trying to get assets of NBOA as he says in his

21   complaint.  There's no reason for the case to exist otherwise.

22           So with all that being said, Judge, I don't think

23   that the Court can just excuse that, you know, given the policy

24   of automatic stays and, you know, it's really a fundamental

25   power of this Court that it has to enforce automatic stays and

1 cannot allow kind of willy-nilly this type of lawsuit to be

2 filed.

3         And for that reason I think there needs to be some

4 sort of monetary award by way of attorneys fees, Judge, at a

5 minimum, and you certainly have the discretion to award

6 punitive damages, but, at a minimum, there should be some

7 monetary award for attorneys fees related to that action.

8         THE COURT:  Okay.  Mr. Ready, do you -- or I'm sorry,

9 am I saying it wrong?  Is it Ready or Ready (pronouncing)?

10         MR. READY:  It's Ready (pronouncing), Your Honor, but

11 that's fine.

12         THE COURT:  Okay.

13         MR. READY:  Common mistake.

14         THE COURT:  Do you want to respond to counsel with

15 regard to the action and whether or not essentially you're

16 violating the stay?

17         MR. READY:  Sure.  A couple of things, so Mr. Heim,

18 although not entering an appearance, was present at the hearing

19 in December of 2023.  At no time did he raise a belief at that

20 time that there was a stay in place that affected the Bene

21 Market proceeding.

22         He spoke with me outside the courtroom, he has e-

23 mailed me since then asking for whether Jason Jordan would make

24 contribution on behalf of certain debts that Alan Redmond owes

25 on behalf of -- I guess as part of his personal guarantee for

1   NBOA, and he has since filed suit against my client on behalf

2   of Alan Redmond in a third party complaint based on debts that

3   Mr. Redmond is being sued for in Philadelphia.  So I want to

4   emphasize again no one has raised in any of those actions a

5   belief that the stay affects the subsequent or in

6   (indiscernible) matters.

7        We have a pretrial conference coming up on the Bene

8   Market matter on the action that's been filed.  No one has

9   filed or told me, until I guess last night, that they believe

10  that this is not part of the bankruptcy -- that this part of

11  the bankruptcy stay.

12       They believe these are assets of NBOA, Your Honor.

13  They can file something appropriate with Your Honor, which will

14  either stop that or bring those assets that they believe belong

15  to Bene Market and thus, really, if they're saying actionable

16  on NBOA, they can't have it both ways.  They say that, they

17  should bring them into the bankruptcy court to be distributed

18  as part of the NBOA bankruptcy.

19       My client believes that he has, you know, additional

20  actions against Alan Redmond, although I'll note that even this

21  Bene Market thing is really a matter of suing Alan Redmond for

22  his action against Jason Jordan personally.  So this is really

23  -- the fact that even NBOA was listed on the caption of the

24  original state court proceeding is really more a function of

25  the fact that they were trying to claim that they had properly

1  ousted Jason Jordan and that they were -- they filed that suit

2  on behalf of NBOA.

3          So for all these reasons we don't believe that any

4  assets that we're chasing in regards to this, all of them are

5  things that are in Alan Redmond's name.  That's what we're

6  pursuing.  We're not pursuing any assets, and if they're saying

7  something shouldn't be there, that it really should belong to

8  NBOA, they should be bringing that into the bankruptcy court

9  voluntarily.

10          THE COURT:  Well, explain to me the -- I have not

11  looked at it yet, because there was some issue as to whether or

12  not co-counsel had seen it.  The complaint, at least facially,

13  looks like it is asserting successor liability and asserting

14  that perhaps Bene Market's assets are really NBOA's assets.  Is

15  that your understanding of where this suit against Bene Markets

16  lies as a successor to NBOA, and that there are assets that are

17  technically NBOA's?

18          MR. READY:  So there are two answers to that

19  question, Your Honor.  So the first is that Judge Rowley, in

20  his underlying memorandum opinion, did find that Bene Markets

21  had I guess taken assets that belong to NBOA or that he had

22  decanted assets out of NBOA and into Bene Markets and it

23  happened some years ago.

24          Our action in the Bene Market case is an action that

25  Alan Redmond misappropriated assets all throughout their

40

1  partnership and that he has hidden assets and that he re-

2  characterized those and that he's put them in various places in

3  his own and into Bene Market.

4        I don't want to assert anything that means it didn't

5  belong to NBOA.  Alan Redmond was taking home -- I mean, I

6  don't know how much of the story and the tales you want to get

7  into here, but this all comes out of the fact that Alan Redmond

8  throws out Jason Jordan, and he locked him out of accounts, and

9  began spending all of the money on himself, that he was buying

10 trips to strip clubs and jewelry and that he was buying

11 expensive clothes.  So this action is not, okay, NBOA owes

12 Jason Jordan money, it's that Alan Redmond took distributions

13 that he was entitled to take but didn't share the half of that

14 with Jason Jordan.

15       So I'm not sure that fully answers the Court's

16 question, but it's not -- it's not about NBOA's assets.  It's

17 about what Alan Redmond took away from Jason Jordan as a co-

18 owner.

19       THE COURT:  Okay.  So you see this case moving

20 forward strictly against Mr. Redmond and Bene Market is sort of

21 an ancillary player in that?

22       MR. READY:  That's correct.  And to the degree that

23 Bene Market owns anything that Alan Redmond therefore is a

24 hundred percent owner of, we believe that we have a right to

25 collect against that.  And if that would be better to have this

1  Court supervise, I have no objection to that.  I have no

2  objection to pulling in Bene Market's assets if they want to

3  disclose those.  But they throughout tried to claim, well,

4  there's just a little bit in there and Alan Redmond spends it

5  on whatever he wants.  So if they're saying we're violating the

6  stay, then they also have already admitted that Alan Redmond

7  had been spending bankruptcy assets without the trustee's

8  supervision or approval.

9       THE COURT:  And is it your position -- I just want to

10  make sure that I get this on the record as well -- is that the

11  consent order that was entered with the trustee in this case

12  resolved any issue with regard to assets that belonged to NBOA

13  that perhaps were transferred to either of those entities and

14  that consent order basically dealt with all of those?

15       MR. READY:  That's correct.  It is our understanding

16  and our position that that allowed us to pursue non -- anything

17  not titled to NBOA as part of our state court lawsuit.

18       THE COURT:  Okay.  All right.  Mr. Hong, do you have

19  something you want to --

20       MR. HONG:  Yes, Your Honor.  Just to add to what Mr.

21  Ready said, in the complaint itself that I'm reading from, .42,

22  it says Redmond also misappropriated funds from NBOA for his

23  own personal benefit, and in the wherefore clauses specifically

24  states Jason Scott Jordan requests judgment in favor against

25  defendants Alan Redmond, Bene Market and Stephanie Miller, and

 1  NBOA is not named at all --

 2          THE COURT:  Okay.

 3          MR. HONG:  -- in any of these counts or anything

 4  anywhere else in the complaint.  They're just referenced as to

 5  --

 6          THE COURT:  Got it.

 7          MR. HONG:  -- the complaint.

 8          THE COURT:  And is there any objection from either of

 9  you to admitting that as an exhibit in this proceeding, the

10  complaint that is?

11          MR. HONG:  No objection, Your Honor.

12          THE COURT:  Is there any objection, Mr. Ready?

13          MR. READY:  No objection.

14          THE COURT:  Okay.

15          MR. READY:  None at all.

16          THE COURT:  All right.  So we'll -- I don't -- oh,

17  it's on the docket, right?

18          MR. VALZ:  It is.

19          MR. HEIM:  It is filed on the docket, Judge.

20          THE COURT:  Okay.  All right, so I will admit that.

21          I'm not going to make a decision today.  I am going

22  to take it under advisement, but since I have you here, why

23  don't you at least tell me what you believe to be your damages,

24  because if I find in your favor, I'll need to at least

25  categorize what the damages are, so --

1          MR. HEIM:  Judge, I -- and Mr. Valz can also speak

2     for the debtor.  I think there have been a lot of legal fees,

3     or legal fees that have been incurred in the 2022 action.  I

4     know there have been legal fees in dealing with the judgment,

5     but putting that aside, focusing on the 2022 action against

6     Bene Market, legal fees, responding to it, responding to a

7     motion to appoint a receiver over Bene Market, and, of course,

8     there have been legal fees to do this, Judge, this fee and

9     these proceedings and filing something with the bankruptcy

10    court.

11         THE COURT:  All right.

12         MR. HEIM:  I think that largely would be --

13         MR. VALZ:   Correct.

14         MR. HEIM:  -- would be the damages.

15         THE COURT:  Okay.  So why don't you do this?  Why

16    don't you submit a certification that has your time slips

17    attached so that I can see exactly what we're talking about and

18    I can make that determination if I need to?

19         MR. HEIM:  Yes.

20         THE COURT:  Please get that obviously to opposing

21    counsel so that, to the extent that there's an objection to any

22    of those being relevant, you can also file a certification --

23         MR. HONG:  Understood, Your Honor.

24         THE COURT:  -- or at least a response to the

25    certification so that I can consider them both.  I will -- as I

44

1 said, I will consider the complaint part of the record and I'll

2 review that as well and make my decision based on your -- what

3 you've offered today, and the pretrial or the status is when?

4        MR. VALZ:  Friday the 12th.

5        THE COURT:  Friday the 12th.  Okay.  I will see what

6 I can do.

7        All right.  Is there anything further?

8        MR. HEIM:  Judge, just for the fee, I can do it I

9 think as quick as possible.

10       THE COURT:  Okay.

11       MR. HEIM:  I'll try to get it to Your Honor before

12 the holiday --

13       THE COURT:  Okay.

14       MR. HEIM:  -- which would be tomorrow I guess, but

15 I'll do the best I can, Judge.

16       THE COURT:  Okay.

17       MR. HEIM:  If it's not, by Monday, okay?

18       THE COURT:  That's fine.

19       MR. HONG:  Your Honor?

20       THE COURT:  Yes?

21       MR. HONG:  I know we've been talking about this a

22 long time but just to make one last point with what opposing

23 counsel said about the successor liability, I just wanted to

24 make sure that, you know, that I understand the standard

25 properly.  And from what I understand is even if what they're

1  saying is true, from cases like <u>Emoral</u>, <u>A.H. Robins</u>, it seems

2  like the unusual circumstances is a very high burden to

3  overcome, and I just want to put that on the record to say that

4  I don't think, even if everything that they said was true,

5  meets that burden.

6          THE COURT:  Understood.  Okay.  If I need anything

7  further I will let you know, but, otherwise, I will take the

8  matter under advisement.

9          Thank you, Mr. Ready, for getting on.

10         MR. HEIM:  Thank you, Judge.

11         MR. READY:  And thank you, Your Honor, for allowing

12  me (indiscernible).  Thank you.

13         THE COURT:  All right.

14         MR. HONG:  Thank you, Your Honor.

15                      * * * * *

16              **C E R T I F I C A T I O N**

17         I, MYRIAM LOPEZ, court approved transcriber, certify

18  that the foregoing is a correct transcript from the official

19  electronic sound recording of the proceedings in the above-

20  entitled matter, and to the best of my ability.

21

22

23  /s/ Myriam Lopez

24  MYRIAM LOPEZ

25  J&J COURT TRANSCRIBERS, INC.        DATE:  August 2, 2024