UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| **National Brokers of America, Inc.,** | : | Case No.  19-15488 (PMM) |
| | : | |
| Debtor. | : | |

# OPINION

## I.    INTRODUCTION

The dispute among the parties to this contested matter has been bubbling for years and now appears to be at a full boil.[1] National Brokers of America, Inc. ("NBOA" or the "Debtor"), a health insurance brokerage firm, was owned jointly by founder Alan Christopher Redmond ("Redmond") and Jason Scott Jordan ("Jordan"). To say that the partnership between Redmond and Jordan did not go well would be an understatement. After Redmond forced Jordan out of NBOA, the pair sued and counter-sued each other in a state court battle royale that concluded with a judgment in Jordan's favor in the amount of $13 million. About one (1) year later, Jordan sued Redmond and others in state court, seeking, *inter alia*, to pierce the corporate veil of Redmond's new company, Bene Market, LLC ("Bene").

The Debtor, protected by the automatic stay, is not an active party to either of these lawsuits. Notwithstanding this critical fact, NBOA filed a Motion for Enforcement of the Automatic Stay (doc. #179, the "Motion") in this Court, alleging that the automatic stay was

---

[1]    On September 3, 2024, three (3) petitioning creditors, including Jason Scott Jordan and Cornerstone Law Firm, LLC, filed an involuntary chapter 11 bankruptcy petition in this Court against Alan Christopher Redmond. Following a contested hearing, on October 1, 2024, an Order for Relief was entered. While the involuntary bankruptcy involves some of the key players here and of course relates to the matter at hand, the fact that Alan Redmond – former co-owner of this chapter 7 Debtor – is himself a debtor does not directly impact the issues addressed in this Opinion.

violated in the two (2) state court actions. The Motion asks for various forms of relief, including the voiding of the state court judgment, the extension of the automatic stay to third parties, and the imposition of sanctions against Jordan and his lawyers.

As discussed below, because the Debtor, whose estate is being administered by the chapter 7 trustee, is not itself threatened by the pursuance or enforcement of litigation, it lacks standing to seek certain relief sought in the Motion. In the alternative, the facts and law do not support a finding that the stay has been violated with regard to the Debtor or that the stay should be extended to non-debtor parties.

Therefore, the Motion will be denied.

## II. PROCEDURAL AND FACTUAL BACKGROUND

*history of the parties*

The Debtor was founded in 2013 by Redmond, the former President of NBOA. AP 20-16, doc. #10, ¶5. Jordan, who has extensive experience in the insurance industry, was hired by the Debtor in July 2013 as partner and health insurance salesman. About four (4) months after Jordan was hired, because the Debtor was having trouble paying Jordan's salary, Jordan and Redmond entered into a Shareholders' Agreement (doc. #179, Ex. B) whereby the two (2) became equal owners of the Debtor. Consideration for the Agreement was, *inter alia*, that Jordan would no longer receive the full payment due under his employment contract. In 2014, following execution of the Agreement, the Debtor's sales increased from $365,000.00 to over $4 million. Motion, Ex. A at 22.

In August 2014, due to alleged poor performance and the revelation of a criminal history, NBOA terminated Jordan's employment. On August 4, 2014, Jordan was denied access to the

Debtor's property and profits (the "Freeze-Out"). See Motion, Ex. A at 22. After the Freeze-Out, Jordan's involvement with NBOA was severed and he was denied access to the Debtor's bank accounts and financial information. Id. at 24. The Debtor paid dividends only to Redmond; Jordan received nothing. Id. at 26. At this time, Redmond allegedly began paying for his personal expenses with the Debtor's money, taking over $116,000.00 in cash and sending $56,000.00 to his mother. Id. at 26-28.

Sometime between 2016 and 2019,[2] Redmond formed a second business – Bene - of which he owns 96%.[3] Like the Debtor, Bene is an insurance brokerage firm. Redmond transferred the Debtor's book of business to Bene at a discounted rate, making Bene quite profitable. Id. at 28.

*inception of 2014 state court litigation*

In October 2014, following the Freeze-Out, the Debtor and Redmond[4] filed a cause of action (no. 14-17117) against Jordan in the Berks County Court of Common Pleas (the "First State Court Action"). The Complaint in the First State Court Action pled six (6) causes of action, including breach of contract, breach of fiduciary duty, and conversion. In December 2014, Jordan filed a counterclaim in the First State Court Action alleging similar breaches, including illegal termination, breach of rights as a shareholder, and failure to pay legal fees. Trial was scheduled to begin just after the Debtor filed its first bankruptcy petition.

---

[2]    The date of the founding of Bene is disputed. See Complaint in State Court, doc. #196, Ex. A at 3-4.

[3]    Stephanie Miller owns the other 4%.

[4]    Redmond was added as a Plaintiff in the First State Court Action a few months after the matter was filed. See AP 20-16 at doc. #16 (undated stipulation).

*bankruptcy petition*

This chapter 7 bankruptcy petition was filed on September 3, 2019. The same day, Robert Holber was named chapter 7 trustee (the "Trustee"). The Debtor's previous chapter 7 case (no. 19-11045) was dismissed after only a couple of months for failure to file documents. In the current case, the Debtor sought and received an extension of the automatic stay. Doc. #'s 9, 28. On October 29, 2019, the Debtor's bankruptcy was determined to be an asset case. Doc. #31.

Following a contested Motion for Relief from the Automatic Stay filed by Jordan (doc. #34) on January 15, 2020, the parties reached an agreement (doc. #67, the "Relief Order"). Relevantly, the Relief Order provided the following:

- The First State Court Action was stayed indefinitely.
- However, Jordan and the Trustee would work together, under specified terms, to pursue the causes of action in the First State Court Action counterclaim.
- The Trustee would take steps to seek removal of the joint claims pursued by him and Jordan from state court to this court.
- The automatic stay would be lifted only with regard to causes of action which could not be removed but instead were remanded to state court; this provision applied only to claims that were not brought against the Debtor.
- Proceeds of the various causes of action defined in the Relief Order would be divided between Jordan and the Trustee in a manner described.
- Otherwise, the Motion for Relief was denied.

A couple weeks later, on January 30, 2020, the Trustee and Jordan removed the First State Court Action to this court. See Adversary Proceeding no. 20-16. On January 4, 2021, this Court entered an Order submitted by the Trustee and Jordan (doc. # 129, the "Consent Order"). The Consent Order provided the following:

- The terms of the Consent Order superseded the Relief Order to the extent they conflicted.
- The First State Court Action was remanded back to the Court of Common Pleas.
- The Adversary Proceeding was dismissed.
- The Trustee "relinquished[d]" any rights to claims brought by Jordan against Redmond in the First State Court Action.

4

- The stay was lifted "as it applies to claims by . . . Jordan against . . . Redmond in the [First] State Court Action provided however that such State Court Action shall not include any claims against the Debtor or the Trustee . . . ."

***judgment in the first State Court Action***

Following remand of the First State Court Action, a bench trial was held in state court in September 2021. Judge Timothy J. Rowley issued a verdict on December 20, 2021 (Motion, Ex. A, the "State Court Decision") which found, *inter alia*, the following:

- After the 2014 Freeze-Out of Jordan, Redmond took over $3 million from the Debtor.
- Redmond misappropriated property of the Debtor by transferring services and assets to his new company, Bene. Bene was "found to be a mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan." State Court Decision, ¶70.
- Redmond effectively stole over $15 million and denied Jordan his share of same. Id., ¶78.
- "Redmond relied on his unproven pleadings and [serial] bankruptcy [filings] . . . to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC." Id., ¶80.

The State Court Decision awarded Jordan over $13 million in compensatory and punitive damages against Redmond (the "Judgment").

Following a post-trial motion by Redmond and the retirement of Judge Rowley, Judge Jeffrey Sprecher issued an amended judgment (Motion, Ex. C, the "Amended Judgment") on March 31, 2022. The Amended Judgment granted the same relief as the Judgment but against "the Plaintiffs," *which included the Debtor*, rather than against Redmond and Bene only. See Motion, Ex. D. Execution of the Amended Judgment was originally stayed, but on January 25, 2024, the Superior Court lifted the stay of execution. Discovery in aid of execution is thus proceeding. Transcript of July 2, 2024 hearing (doc. #204, "Tr.") at 35-36.

On June 17, 2024, nearly two (2) years after entry of the Amended Judgment, Jordan filed a Motion to Correct the Amended Judgment. Doc. #202, Ex. A. On July 8, 2024 (after the

5

hearing in this Court) Redmond opposed the Motion to Correct, asserting that the "most legitimate solution to this matter is [for the court] to [s]trike the [j]udgment in its entirety as it was entered in error and contravention of the [a]utomatic [s]tay." Doc. #202, Ex. B; Tr. at 7.

*settlement of avoidance claims*

Meanwhile, back in Bankruptcy Court, the Trustee's administration of the Debtor's chapter 7 estate caused him to allege that Redmond and Bene received $593,157.97 in fraudulent transfers from the Debtor. Doc. #152. On April 19, 2022, I approved a stipulation (doc. #152, the "Stipulation") between the Trustee and Redmond and Bene, resolving the fraudulent transfer allegations and releasing each party from current or future liability. Doc. #156. The Stipulation provided that Redmond will pay a total of $200,000.00 to the Trustee in specified installments from April 7, 2022, through March 1, 2024. Additionally, the Stipulation provided for mutual releases; the Trustee cannot sue or be sued, and neither Redmond nor Bene can collect from the estate. Stipulation, ¶¶10-11.

*the second state court action*

On July 27, 2022, Jordan[5] sued Redmond and Bene, as well as Stephanie Miller ("Miller"), the former Chief Financial Officer of the Debtor and partial owner of Bene, in the Berks County Court of Common Pleas for unjust enrichment and sought to pierce Bene's corporate veil (case no. 22-11757, doc. #196, Ex. A, the "Second State Court Action."). NBOA is not named in the lawsuit. The Second State Court Action alleges that Redmond misappropriated $11 million of the Debtor's funds and diverted the Debtor's book of business by transferring it to Bene at a discounted rate. The action also alleges that Bene is a front for Redmond's personal dealings. Specifically, the Complaint contains the following allegations:

- Redmond transferred assets from the Debtor to Bene for no consideration.

---

[5] Jordan is represented by Joel Ready, Esq. and the Cornerstone Law Firm. Motion at 5.

- In doing so, Redmond sought to avoid paying Jordan for the Judgment.
- The assets "transferred from NBOA to Bene . . . must be preserved in order to prevent irreparable injury to . . . Jordan." Second State Court Action at 7.
- "As Redmond owned half of NBOA and now owns almost all of Bene . . . there exists a substantially common ownership between the two entities . . . the separate personalities of the corporations and the individual no longer exist." Id. at 8.

*the motion for enforcement*

The current iteration of this longstanding dispute - the Motion at issue - was filed in this Court on May 24, 2024. The Motion alleges that the automatic stay was violated in both the First and Second State Court Actions. The Motion asks the Court to "dismiss" the verdict and judgment in the First State Court Action, enjoin Jordan from pursuing the Amended Judgment, "dismiss" [6] the Second State Court Action, and impose sanctions against Jordan and his counsel for a willful violation of the automatic stay. Redmond was allowed to intervene in the matter. Doc. #189.

Jordan responded to the Motion and filed a Cross-Motion (doc. #185), seeking retroactive annulment of the stay and dismissal of this bankruptcy case.[7]

A hearing with regard to the Motion was held on July 2, 2024. Following the hearing and at the direction of the Court, Redmond's counsel submitted time sheets supporting the contention that attorney fees incurred in defending the Second State Court Action and the Motion to Enforce amount to $95,228.93. Doc. #201. Jordan argues both that these fees are not the Debtor's responsibility and that the hourly rates are unreasonable. Doc. #202.

---

[6] The Debtor fails to provide an explanation as to how a federal Bankruptcy Court has jurisdiction to dismiss a state court lawsuit.

[7] The request for dismissal was later withdrawn. Doc. #202 at 3.

7

## III. THE PARTIES' ARGUMENTS

The Debtor makes three (3) arguments in support of the Motion: 1) the entry of the Amended Judgment against the Debtor violated the automatic stay; 2) the stay should be extended to Redmond and Bene because the finances are both non-debtor parties are "intertwined"[8] with those of the Debtor; and 3) the Second State Court Action violates the stay by seeking assets that belong to the Debtor's estate. The Debtor asks this Court to dismiss the Second State Court Action. Tr. at 25. The Debtor accuses Jordan of seizing on the Judgment in an attempt to step into the shoes of the Trustee and collect assets of the estate. Tr. at 8:22.

Redmond, as intervenor, argues that the Second State Court Action seeks to collect assets of Bene under the theory that the company is a successor to the Debtor. Tr. at 8-11. Redmond points to the language of the Complaint in the Second State Court Action which states that Bene and NBOA have a "unity of interest and ownership." Tr. at 16. Redmond seeks attorney's fees for the stay violation. Tr. at 29; doc. #201.

Jordan responds that the Amended Judgment in the First State Court Action was a simple ministerial error and that he has filed a motion with the State Court to correct the error. Further, the Second State Court Action was brought after the Consent Order between the Trustee and Redmond; the relief sought by the Debtor is, Jordan argues, barred by "waiver, estoppel, and laches." Cross-Motion at 7; Tr. at 12. He also asserts that the relief is barred by the doctrine of unclean hands.[9] Doc. #202. Jordan argues that proper relief is for the Court to void the Judgment as to the Debtor only or retroactively annul the stay. Jordan asserts that the point of

---

[8] Motion at 7.

[9] Jordan points out that the Judgment was entered more than three (3) years before the Debtor filed the Motion. In certain circumstances, a party's failure promptly to raise the issue of a stay violation may amount to inequitable conduct. In re Coletta, 336 F. App'x 202, 205 (3d Cir. 2009). I need not decide whether these equitable doctrines apply, however, because the issue may be decided on more straightforward grounds.

the Second State Court Action is to recover money that Redmond stole from Jordan, not taken by the Debtor. Tr. at 40.

## IV. STANDARD WITH REGARD TO THE AUTOMATIC STAY

The automatic stay, the imposition of which is one of the most fundamental tenets of bankruptcy law, "applies to a broad range of conduct, but in its most conventional application . . . restrains pending debt collection litigation, thereby furnishing an obvious benefit to the debtor: a 'breathing spell.'" In re Iezzi, 504 B.R. 777, 779 (Bankr. E.D. Pa. 2014) (citing Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991)).

The automatic stay goes into effect at the beginning of a bankruptcy case and is intended to protect property of the estate and allow for an orderly administration of assets. See In re Bolus, 2022 WL 3948685, at *3 (Bankr. M.D. Pa. Aug. 29, 2022). Further, the stay bars and nullifies post-petition actions in non-bankruptcy cases against the debtor or property of the estate. See In re Hillis Motors, 997 F.2d 581, 585 (9th Cir. 1993).

## V. ANALYSIS

### A. Issue 1: Does the Amended Judgment Violate the Automatic Stay?

The Motion asserts that the Amended Judgment entered against the Debtor (and others) is a "knowing violation of the automatic stay by Jordan . . . (Attorney) Ready . . . and Cornerstone Law Firm." Motion at 12. The Debtor takes this argument one step further, asking the court both to enjoin Jordan from enforcing the judgment and (perhaps in the alternative) voiding the Amended Judgment altogether. Id. at 13.

In response, Jordan agrees that the stay has been violated by the entry of the Amended Judgment against the Debtor. Jordan's position is that because the stay violation was a

9

ministerial act and because he filed a motion to amend the judgment, this Court should annul the stay (presumably to allow the correction to proceed in state court).

First, I note that while Jordan asserts that laches applies due to the Debtor's extended inactivity, *both* parties sat on their rights with regard to the erroneous Amended Judgment, which was entered against the Debtor more than two (2) years ago. See doc. #202 at 4. Only Jordan has since filed a motion to amend the judgment in state court. On the other hand, the Debtor, who has failed to seek correction of the Amended Judgment, now suddenly considers its entry an emergency so severe that it warrants an injunction against non-debtors.[10]

Further, the issue of the effect of the Amended Judgment on the Debtor is ripe for decision. Unlike the questions of imposing the stay or enjoining third party litigation, see infra sections V.B and V.C, the Debtor does have standing to pursue a stay violation with regard to a party's efforts to recover a claim *from the debtor* (as opposed to the estate). 11 U.S.C. §362(a)(6); In re Radcliffe, 372 B.R. 401, 412 (Bankr. N.D. Ind. 2007), aff'd, 390 B.R. 881 (N.D. Ind. 2008), aff'd, 563 F.3d 627 (7th Cir. 2009).

In addition, Jordan is correct that a Bankruptcy Court has the power to annul the stay. In re Myers, 491 F.3d 120, 127 (3d Cir. 2007) (noting that retroactive annulment can "revitalize" actions that were void because they were originally taken in violation of the automatic stay). This means that violative action is without effect unless and until a "subsequent court order" annuls the stay and validates the void action. In re Redante, 579 B.R. 354, 361 (Bankr. E.D. Pa. 2018).

Here, retroactive annulment of the stay would have the effect of making the Amended Judgment against the Debtor valid. However, the amending of the judgment was a ministerial, logistical error; the amendment was an act by a successor judge who may not have been familiar

---

[10] It is noteworthy, though perhaps not surprising given the animosity among the parties, that the Debtor seeks to classify a simple mistake made by a state court judge as a sign of Jordan's nefarious and willful motives.

10

with the fact that the pending litigation was stayed against NBOA. In other words, annulment is not the proper recourse because such action would validate a judgment that is void as a violation of the automatic stay *and should remain invalid*.

Therefore, I will strike as void the Amended Judgment *only with regard to the Debtor*. This is the most logical and efficient solution. The Debtor's request that the Amended Judgment is a stay violation that must stricken with regard to Bene and Redmond is not supported by law given that neither party was subject to the stay when the judgment was entered. Furthermore, as discussed below, the Debtor is not in a position to ask for relief on behalf of third-party non-debtors.

**B. Issue 2: Should the Automatic Stay be Extended to Redmond and Bene?**

Next, the Debtor seeks an extension of the automatic stay to Redmond and Bene because "the finances of Redmond and Bene are so intertwined with the Debtor . . . ." Motion at 7.

Although the automatic stay usually applies only to bankruptcy debtors, ACandS, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 259 (3d Cir. 2006); 3 Collier on Bankruptcy P 362.03 (16th 2024), the Debtor is correct that under "unusual circumstances" the stay may be extended to third party co-defendants. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). The Fourth Circuit described unusual circumstances this way:

> Something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties. This unusual situation, it would seem, ***arises when there is such identity between the debtor and the third-party defendant*** that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

Id. (emphasis added) (internal quotation marks omitted). The Debtor insists that this is the situation here but asserts only summarily that the Amended Judgment against Redmond and

11

Bene "is based on a theory that they inappropriately came into possessions of Debtor." Motion at 7.

An extension of the automatic stay is an extraordinary measure, reserved for the rarest of circumstances. This is not one of those cases. The request to shield Bene and Redmond from liability must be denied for at least two (2) reasons.[11]

First, the Debtor lacks standing[12] to seek relief on behalf of Bene and Redmond. In order to establish standing under Article III, a plaintiff must show (i) an "injury in fact," (ii) a "causal connection" between the injury and the challenged conduct, and (iii) a likelihood that the injury will be "redressed by a favorable decision." In re Brown, 2018 WL 4637465, at *3 (Bankr. S.D.N.Y. Sept. 25, 2018) (citing Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560-61 (1992)). NBOA indicates that a judgment against Bene or Redmond may injure it simply because their finances are "intertwined" with those of NBOA. However, the chapter 7 Debtor, whose estate has been turned over to a trustee, has no stake in this game. The Debtor is neither in charge of its financial dealings nor a beneficiary of any related recovery; it is, rather, an empty shell of a company, with no business and no assets.[13]

The fact that the Debtor is not operating or administering its estate means that none of the necessary standing requirements have been met. Potential collection from property of the estate

---

[11]  I am well aware that Redmond, an involuntary debtor in a separate case, is presently protected by the automatic stay. However, I will address the arguments regarding stay extension to Redmond because my holding may well become relevant when Redmond emerges from his involuntary chapter 11.

[12]  Although not discussed at the hearing or in the papers, the question of standing is a threshold issue which must be considered by a court. See In re Jamuna Real Est., LLC, 445 B.R. 490, 499 (Bankr. E.D. Pa. 2010) (noting that standing, like subject matter jurisdiction, must be considered by the court sua sponte).

[13]  The Debtor's Motion, in fact, acknowledges that the Trustee is administering the estate. Motion at 10 ("A general claim is part of the original organization's bankruptcy estate and thus should be subject to prosecution **by the bankruptcy trustee** . . . The same can be said about actions against a party under a veil-piercing theory.") (emphasis added).

will not harm the Debtor and a favorable decision regarding the Motion's request for a stay extension will not redress an injury. In fact, the only harm that can be alleged by actions taken against Redmond and Bene are harms to the estate itself if these two (2) parties are rendered insolvent and cannot make the agreed settlement payments to the Trustee. Critically, however, an attempted recovery for any such harm must be brought *by the Trustee on behalf of the estate*, and not by the Debtor on behalf of a dormant company. The Trustee, who is well-informed of the details of these proceedings, chose not to bring such an action. In sum, because the Debtor fails to identify even a hypothetical harm that would be favorably redressed by the extension of the stay to non-debtor parties, it lacks the ability to pursue the relief sought.

Second, even if the standing issue were somehow resolved in the Debtor's favor, the qualifying conditions for extending the stay have not been met here. Courts in this Circuit consider the following factors when determining whether unusual circumstances warrant an extension of the automatic stay to third parties: whether "(i) the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." In re LTL Mgmt., 638 B.R. 291, 304 (Bankr. D.N.J. 2022); see also In re Saxby's Coffee Worldwide, LLC, 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009) (discussing a similar three (3) part test and noting that imposing the stay on non-debtors is justified "only if the creditors actions would interfere with, deplete or adversely affect property of the bankruptcy estate or would frustrate the statutory scheme embodied in Chapter 11 or diminish the debtor's ability to formulate a plan of reorganization.") (cleaned up).

The most compelling argument for enjoining prosecution of the Second State Court Action against the non-debtor parties is that the Debtor's estate is inextricably intertwined with

13

Redmond and Bene's and, therefore, the potential recovery from these third parties will harm the Debtor's creditors by diminishing assets of the estate. This argument is supported by the State Court Decision's finding that Bene is "a mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan." ¶70.[14] However, that state court finding—in a separate lawsuit—does not mean that assets of the estate are affected or endangered. The Stipulation defined and limited the rights of the estate to seek redress from Redmond and Bene. Therefore, the agreement ensures that any recovery from Redmond and Bene in the Second State Court Action will not inadvertently amount to a reduced recovery by the estate. Further, the continuation of actions against third-parties Redmond and Bene will not impact reorganization under the Code; the Debtor is liquidating and the Trustee will administer any recovered assets to unsecured creditors.

Contrary to the Debtor's position, the law relied upon in the Motion supports this conclusion. For example, the Debtor points to In re McCartney as a relevant case in which the Third Circuit permitted the automatic stay to be extended to a non-debtor. 106 F.3d 506 (3d Cir. 1997). In McCartney, the Debtor was a guarantor for a loan to a third party (Lamar). The lender's efforts to protect the loan deficiency pursuant to the Pennsylvania Deficiency Judgment Act required notice to the Debtor; if such procedure was not followed the loan may have been deemed satisfied as a matter of law. Considering the odd posture as well as the fact that Lamar did not have assets with which to pay the debt, the Third Circuit found that "the bankruptcy court properly concluded that the automatic stay extended to enjoin [the lender] . . . This case falls

---

[14] Notably, the findings in the State Court Judgment are not *res judicata* in this Court because the parties are not the same (the Debtor is no longer an active party in the State Court Action) and because the cause of action is not the same (breach of contract, breach of fiduciary duty, conversion and related counts in the state court; violation of the stay in this Court). R. v. Ridley School Dist., 744 F.3d 112, 120 (3d Cir. 2014); In re Bennett, 528 B.R. 273, 276–77 (Bankr. E.D. Pa. 2015).

squarely under the 'unusual circumstances' exception as developed in *A.H. Robins*: any deficiency judgment recovery from Lamar's would have necessarily impacted upon McCartney's estate." Id. at 511. Here, as discussed, a judgment against Redmond or Bene would not affect the Debtor's estate or the bankruptcy process. Therefore, McCartney is inapposite.[15]

In sum, this is not a case featuring unusual circumstances which may give rise to the extraordinary remedy of a stay extension to third party non-debtors. The facts here—the principal of a chapter 7 debtor finding himself and his new company the target of additional state court litigation—are not, at least in the bankruptcy context, unusual. An extension of the stay in favor of Redmond and Bene would simply succeed in protecting non-debtors at the expense of other non-debtors. The chapter 7 bankruptcy estate is not at risk and would not benefit from the relief.

### C. Issue 3: Does the Second State Court Action Violate the Stay?

Similarly, NBOA's argument that the Second State Court Action violates the automatic stay is unavailing for at least two (2) reasons.

First, because the Motion seeks to determine and enforce rights which don't belong to or impact the movant, the Debtor lacks standing to seek this relief. The Debtor argues that the Second State Court Action seeks impermissibly to recover "assets they not only acknowledge, but affirmatively argue, belong to Debtor's estate." Motion at 7. In other words, the Debtor alleges a violation of 11 U.S.C. §362(a)(3).[16]

---

[15] NBOA also relies on In re Philadelphia Newspapers, LLC, 407 B.R. 606 (E.D. Pa. 2009). The Court in Philadelphia Newspapers allowed an extension of the automatic stay to third parties upon a particularized finding that "the interests of the Debtors and Non–Debtors in the state action are identical [and] the diversion of resources caused by the state action against the Non–Debtors will impact the Debtors' ability to engage in timely and effective reorganization." Id. at 616. Again, this case is inapposite because such concerns are not present here.

[16] Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

15

In a case with similar facts, Judge Frank held that a chapter 7 debtor, sued in state court for, among other things, fraudulent transfer, breach of contract, and successor liability, did not have standing to seek redress for a violation of the automatic stay. See In re Gronczewski, 444 B.R. 526, 531-33 (Bankr. E.D. Pa. 2011).

According to Judge Frank:

> [The Debtor] lacks standing to assert that the Respondents violated § 362(a)(3). Section 362(a)(3) is, by its own terms, designed to protect the integrity of the bankruptcy estate . . . it is a rare case where actions taken against property of the estate affect an individual Chapter 7 debtor personally . . . . **Significantly, in the chapter 7 context, the sole legal representative of the bankruptcy estate is the chapter 7 trustee. As a result, many courts have held that the only party with standing to raise a violation of § 362(a)(3) is the trustee** . . . . [T]here is simply nothing in the record to suggest the Respondents' initiation or prosecution of fraudulent transfer claims asserted against non-debtor third parties in the State Court Action will have any adverse impact on the Debtor. The linchpin of standing, in the constitutional sense, is that the party seeking relief "demonstrate exposure to some actual or threatened injury." . . . As no actual or threatened injury is present, the Debtor lacks standing to prosecute the claim for the asserted violation of § 362(a)(3).

Id. (emphasis added) (citations omitted). The same is true here. The Debtor, whose assets and liabilities are being managed by the Trustee, is threatened with no discernable injury from the prosecution of the Second State Court Action. Standing to pursue and distribute assets of the estate is the Trustee's job and, critically, the Trustee wants no part of this litigation. See doc. #193 at 1.

Second, and as a further explanation of the first point, the Stipulation between Redmond and Bene (the "Redmond Parties" as defined in the Stipulation) and the Trustee resolves the fraudulent transfer allegations against the Redmond Parties and releases all parties from liability. Specifically, paragraph 10 of the Stipulation states that the Redmond Parties and their successors "shall release and forever discharge the Trustee, the Debtor's estate and any . . . successors . . . ."

16

Paragraph 11 of the Stipulation provides a parallel release by the Trustee against the Redmond Parties.

Thus, the Debtor's argument that the Second State Court Action must be enjoined because prosecution of that lawsuit puts property of the estate at risk is belied by the fact that the estate has been released from any such liability and that the Trustee's "rights are reserved" by the Stipulation. Doc. #193 at 1.

The Debtor insists that the Second State Court Action is a continuing and knowing violation of the stay because Jordan, Ready, and Cornerstone seek damages from Redmond, Bene, and Miller "from assets they not only acknowledge, but affirmatively argue, belong to Debtor's estate." Motion at 7. I take the argument to be that, due to their pilfering from NBOA, Redmond and his associates are sitting on money that may not rightfully be theirs. This scenario is possible and, given the findings in the State Court Decision, may even be probable. But the character of Redmond and Bene's assets no longer matters to the Debtor's case.[17]

Finally, for two (2) straightforward reasons, damages will not be paid to Redmond's counsel, as requested in the Motion and at the hearing. Tr. at 29; doc. #201. First, damages are not warranted where a violation of the stay has not been found. 11 U.S.C. §362(k). Second, just as the Debtor lacks standing to seek relief on behalf of Redmond, so too does Redmond lack standing to seek relief on behalf of the Debtor. To be clear, Redmond seeks damages not for a stay violation against *him* in *his bankruptcy* but rather for an alleged violation of the stay *against*

---

[17] Whether or not Bene is a "successor corporation" to the Debtor—an allegation that the Debtor asserts is critical to the determination of whether the stay has been violated by the Second State Court Action (citing In re Emoral, Inc., 740 F.3d 875 (3d Cir. 2014))—is irrelevant. First, the argument fails on the facts; there has been no finding in this court that Bene is a continuation of the Debtor. Second, even if Bene were determined to be a successor corporation, the Debtor has released all claims against that company.

17

*NBOA*, the sole Debtor in this case. Even if the stay had been violated, Redmond could not be compensated for harm to another party. This portion of the relief sought will be denied.

### VI. CONCLUSION

The Code makes clear that a bankruptcy debtor has every right to scream foul when a stay violation has occurred. The automatic stay prevents creditors from collecting or attempting to collect from the bankrupt. The provision is meant to ensure an orderly process; no creditor gets to sneak ahead. Thus, on its face, the Motion—seeking to stall an allegedly crafty plot to grab NBOA's assets—makes sense.

However, a closer look reveals the Motion is not meant to protect the rights or assets of the Debtor, whose estate is in the hands of the Trustee and being administered for the benefit of creditors. The Debtor is essentially no longer a player in its own bankruptcy case. One must wonder - particularly given the extent and character of this long feud - what motivated NBOA to move here and now for the relief sought. Perhaps Redmond's involuntary chapter 11 will shed light on the matter. In the meantime, and for the reasons discussed, the Motion will be denied.

**Date: October 18, 2024**

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**